United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 30, 2004**

Charles R. Fulbruge III
Clerk

Revised

In the
# United States Court of Appeals
## for the Fifth Circuit

_____

No. 04-70028

_____

DAVID RAY HARRIS,

Plaintiff-Appellee,

VERSUS

GARY L. JOHNSON,
EXECUTIVE DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION;
NEILL HODGES,
WARDEN, HUNTSVILLE UNIT HUNTSVILLE, TEXAS;
UNKNOWN EXECUTIONERS,

Defendants-Appellants,

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before SMITH, DENNIS, AND CLEMENT,
Circuit Judges.

PER CURIAM:

The state defendants seek vacatur of a temporary restraining order ("TRO") that prohibits the State of Texas from using a particular combination of chemicals during the execution of David Harris, scheduled for June 30, 2004.[1] Agreeing with the state that Harris is not entitled to equitable relief because he has "delayed unnecessarily in bringing the claim," *Nelson v. Campbell*, 124 S. Ct. 2117, 2126 (2004), we vacate the TRO and render judgment of dismissal.

I.

Harris was convicted of capital murder and sentenced to death in April 1986. Eighteen years later, in April of the current year, he sued under 42 U.S.C. § 1983 challenging the manner in which Texas intends to carry out that sentence. The claim was filed six weeks after the denial of his first federal habeas petition was finalized by the Supreme Court's denial of his petition for a writ of certiorari, *see Harris v. Dretke,* 124 S. Ct. 1503 (2004), and ten weeks before his scheduled execution.

---

[1] Although a TRO would not normally be immediately appealable, *see County, Mun. Employees' Supervisors' & Foremen's Union v. Laborers' Intern. Union of N. Am.*, 365 F.3d 576, 578 (7th Cir. 2004), we have jurisdiction over this appeal by virtue of the district court's certification of a controlling question of law for interlocutory review. *Cf.* 28 U.S.C. § 1292(b). We hereby GRANT leave to take this interlocutory appeal under § 1292(b). To the extent, if any, that there is still a jurisdictional issue, we treat the notice of appeal as a petition for writ of mandamus and GRANT the petition.

The district court, relying on *Martinez v. Tex. Ct. of Crim. Appeals*, 292 F.3d 417, 421 (5th Cir. 2002), determined that Harris's complaint had to be construed as a successive 28 U.S.C. § 2254 petition for a writ of habeas corpus, and dismissed the petition for failure to seek this court's authorization before its filing. *Cf.* 28 U.S.C. § 2244(b)(3)(A). In an unpublished order, we reversed and remanded for reconsideration in light of the intervening decision in *Nelson*, 124 S. Ct. at 2122-25, which we interpreted as overturning *Martinez's* categorical bar on § 1983 method-of- execution suits. *Harris v. Dretke*, No. 04-70020, 2004 WL 1427042 (5th Cir. June 23, 2004) (per curiam) (unpublished).

On remand, the district court diligently requested briefing and argument, then held that Harris's complaint is cognizable under § 1983 because it challenges only the state's discretionary choice of execution methods and not the execution itself. The court also decided that Harris had not unreasonably delayed the filing of his claim and had otherwise satisfied the standards for receiving a TRO. *See, e.g., Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir.1998).

II.

In *Nelson*, 124 S. Ct. at 2123-24, the Court held that method-of-execution claims may be brought in a § 1983 suit instead of a habeas petition, so long as the claim fits within certain limitations. Recognizing that a challenge to a method of execution is not aptly described as either a challenge to the validity of the death sentence (a paradigmatic habeas claim), or as a challenge to the conditions of the inmate's confinement (a paradigmatic § 1983 claim), the court declined to "resolve the question of how to treat method-of-execution claims generally." *Id.* at 2125. Whatever the tipping

point before a § 1983 method of execution claim becomes a broader challenge cognizable only in habeas, it is apparent that one of the animating principles is *Nelson*'s requirement that the § 1983 claim not unduly threaten the state's ability to carry out the scheduled execution. *Id.* at 2124-25.

To that end, *Nelson*'s analysis focuses not just on whether there are medically viable alternatives to the challenged procedure, but also on whether those alternatives are even open to the executioners as a matter of state law. *Id.* at 2123-24. Similarly, "the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right," *id.* at 2125-26, and "[a] court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Id.* at 2126 (quoting *Gomez v. United States Dist. Ct.*, 503 U.S. 653, 654 (1992) (per curiam).

### III.

We do not decide whether Harris properly states a claim under § 1983, because even if he does, he is not entitled to the equitable relief he seeks. *See Gomez,* 503 U.S. at 654. Harris has been on death row for eighteen years, yet has chosen only this moment, with his execution imminent, to challenge a procedure for lethal injection that the state has used for an even longer period of time. Unlike the plaintiff in *Nelson*SSwho challenged a procedure that had been newly instituted to address his unique medical conditionSSHarris cannot excuse his delaying until the eleventh hour on the ground that he was unaware of the state's intention to execute him by injecting the three chemicals he now challenges.[2]

---

[2] Briefly stated, the substance of Harris's com-
(continued...)

Instead, Harris makes four arguments to explain the reasonableness of putting off his claim until this time. None is persuasive.

First, Harris argues that he was not dilatory, because it was not until March of this year that the Supreme Court denied the certiorari petition in his habeas proceeding, and up until that point he had a reasonable expectation that he would receive habeas relief that would render his complaint unnecessary. In accepting this argument, the district court remarked that "[t]here was no reason for him to attack the method of his execution before that date."

That argument is nothing more than a restatement of the very thing the plaintiff is not entitled to do under *Gomez*, 503 U.S. at 654SSnamely, to wait until his execution is imminent before suing to enjoin the state's method of carrying it out. The denial of certiorari may well have cast the issue in a new and urgent light for Harris, but it also entitled the state to set a date for, and proceed with, his execution. The brief window of time between the denial of certiorari and the state's chosen execution dateSSin this case, four monthsSSis an insufficient period in which to serve a complaint, conduct discovery, depose experts, and litigate the issue on the merits.

---

[2](...continued)
plaint is that the state is acting with deliberate indifference by choosing to use only a short acting barbituate, sodium thiopental, to numb the pain caused by a lethal dose of potassium chloride. His complaint further alleges that the second drug introduced in the execution, pancuronium bromide, is capable of negating the sedative and serves no purposes except to leave him appearing serene while suffering excruciating pain.

By waiting until the execution date was set, Harris left the state with a Hobbesian choice: It could either accede to Harris's demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the Eighth Amendment; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under Harris's scheme, and whatever the state's choice would have been, it would have been the timing of Harris's complaint, not its substantive merit, that would have driven the result.

Indeed, on the facts of the present case, it is uncertain whether the state even has that much of a choice. Harris's initial complaint failed to specify an adequate and acceptable alternative to the state's lethal execution procedures. It was not until he filed papers on remand before the district court, five days before his execution, that Harris finally specified precisely which alternatives he would find acceptable. Given that limited amount of response time, it is not evident that the state is even capable of carrying out the execution using these alternative methods.

That is an untenable position in which to place the state. For the entirety of his eighteen years on death row, Harris knew of the state's intention to execute him in this manner. It was during that periodSSin which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the futureSSthat he needed to file this challenge.[3] By waiting as long as he did,

Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.

Second, and related, Harris argues that the delay can be justified by the fact that he has spent the last eighteen years in continuous litigation challenging the basis for his conviction and sentence. In accepting this argument, the district court remarked that it could not "discern where in this chronological list of events Mr. Harris might have had 'ample' time to make this § 1983 claim."

That argument, respectfully, mistakes the fundamental reality that Harris's § 1983 claim, to be considered viable at all, must seek a form of relief wholly apart from that which he pursued in his collateral attacks on the underlying conviction and sentence. The fact that Harris was challenging his conviction on direct and collateral appeal has no bearing on his right to use § 1983 as a vehicle for challenging the conditions of his confinement, because the two claims can proceed parallel to one another.

To the extent Harris's argument is that he lacked the resources to pursue both claims at once, this is belied by the fact that there were

---

[3] Arguably, there was a one year window in which this was not the case: between September 2001, when the district court granted Harris pro-
(continued...)

[3](...continued)
visional habeas relief, and November 2002, when this court vacated the district court's ruling and rendered judgment for the state. *See Harris v. Cockrell*, 313 F.3d 238 (5th Cir. 2002). Exclusive of that time frame, there were seventeen years in which Harris was faced with overcoming substantial obstacles in proving an infirmity in his conviction or sentence. Whatever hope Harris had for obtaining a reprieve, he had to equally face the difficult reality that the State could one day carry out his sentence.

extensive periods in which his habeas case was stayed pending the outcome of related cases before the Supreme Court, as well as by the flurry of last-minute habeas filings Harris has managed to make in parallel to the present suit. There is no convincing reason why Harris could not have brought this claim at any point during his eighteen-year stay on death row, had he but felt the urgency to do so.

Third, Harris argues that the claim was previously unavailable to him because of the procedural rule this court established in *Martinez*, 292 F.3d at 421. He therefore reasons that the claim was unavailable to him until the decision in *Nelson* opened the door for § 1983 method-of-execution claims. Harris makes this argument despite the fact that he filed suit well over a month before *Nelson* was decided, and despite the fact that the plaintiff in *Nelson* was similarly barred by circuit precedent at the time he filed his suit. So long as there remains the possibility of en banc reconsideration and Supreme Court review, circuit law does not completely foreclose all avenues for relief.

Even if we bought the premise of Harris's argumentSSthat *Martinez* rendered his claim procedurally unavailableSSwe could not accept, as a conclusion, that it excuses his late filing. *Martinez* was rendered in 2002, so it provides no explanation, let alone excuse, for Harris's refusal to bring this claim for the overwhelming amount of his lengthy stay on death row.

Finally, Harris argues that the claim was previously factually unavailable to him because it relies on standards of decency thatSShe allegesSShave only recently evolved to the point of finding lethal injection

unconstitutionally cruel.[4] Taken to its logical conclusion, Harris's argument is that an Eighth Amendment method-of-execution claim can never be considered dilatory, because the condemned has an interest in awaiting the day when, he hopes, society comes to share his view of capital punishment, and his complaint once filed will be viewed in light of society's most recent progress along that path.

The incentives Harris identifies do not provide an excuse for delaying his suit. Undoubtedly, the plaintiff in *Gomez*, 503 U.S. at 653, stood a stronger chance of successfully challenging California's use of the gas chamber in 1992, than he did at the time of his conviction and sentence in 1979, but that fact did not entitle him to delay until the eleventh hour. *Id.* at 654. Although we have ample

---

[4] Harris also maintains that the complaint was previously factually unavailable to him because he relies, in part, on a veterinary study that was released in 2001, and on a statute Texas enacted in 2003 to limit the methods by which animals can be euthanized. *See* TEX. HEALTH & SAFETY CODE, § 821.052(a). Nevertheless, Harris's own filings demonstrate that the substance of his complaint has been factually available for the entirety of his term on death row.

Specifically, most of the similar statutes Harris relies upon were enacted before or shortly after his conviction and sentence. *See, e.g.,* OKLA. STAT., Tit. 4, § 5-1 (enacted in 1981); FLA. STAT. §§ 828.058 and 828.065 (enacted in 1984); MASS. GEN. LAWS, § 140:151A (enacted in 1985); ME. REV. STAT. ANN., Tit. 17, § 1044 (enacted in 1987); N.J.S.A. 4:22-19.3 (enacted in 1987); N.Y. AGRIC. & MKTS. § 374 (enacted in 1987). In addition, of the eight instances Harris cites in which Texas's lethal injection procedures have encountered some form of difficulty, seven took place in 1992 or earlier.

reason to doubt whether societal standards of decency have evolved to the point at which Harris claims them to be,[5] he could have chosen to take advantage of the legal procedures offered by a similarly mature and tolerant society just a few years ago. Had he done so, Harris would have had an opportunity to proceed to an adjudication of his claims on the merits. Having chosen instead to litigate this issue in the final days before the state carries out his execution, his suit can serve no purpose but to further delay justice that is already eighteen years in the making.

Accordingly, we VACATE the temporary restraining order and DISMISS Harris's complaint.

---

[5] *See, e.g., Cooper v. Rimmer,* 358 F.3d 655, 658-59 (9th Cir. 2004) (rejecting an Eighth Amendment challenge to a lethal injection protocol similar to Texas's); *State v. Webb*, 252 Conn. 128, 750 A.2d 448 (2000) (same); *Sims v. State*, 754 So.2d 657 (Fla. 2000) (same).

DENNIS, Circuit Judge, dissenting:

I dissent for the reasons assigned by the district judge. In my opinion, the district court's order of June 29, 2004 convincingly addresses and refutes the arguments set forth in the panel majority opinion. Because time is of the essence I will not belabor those points, but I reserve the right to file additional reasons later.

In this case, there is a convergence of: (1) Texas's disturbing refusal to disclose any reliable information regarding the unpublished non-statutory lethal injection protocol it proposes to use in this case or to reveal whether it has any alternative protocol which it would not be prevented from using by Harris's §1983 claim; (2) a recent significant increase in medical evidence that using ultra-short acting barbiturates such as sodium thiopental in conjunction with a neuromuscular blocking agent such as pancuronium bromide is an inhumane method of killing a living being; and, (3) the May 24, 2004 Supreme Court decision in Nelson v. Campbell, 124 S. Ct. 2117 (2004), which, for the first time, permits an inmate to bring a §1983 challenge to an aspect or adjunct of a state's lethal injection execution procedure if the §1983 action does not necessarily prevent the state from carrying out the execution. Also, the Court in Nelson did not address, but left open the broader question of how to treat method-of-execution claims generally.

Because of this convergence, and the reasons assigned by the

7

district court, it appears to me that the district court did not abuse its discretion in granting Harris's request for a temporary restraining order. I would deny the state's motion to vacate the temporary restraining order and uphold the district court's order.

DENNIS, Circuit Judge, additional dissenting reasons:


Harris did not wait until the eleventh hour to file his claim. Harris has never been given a copy of the protocol by which he will die. Texas does not publish or otherwise disclose its execution protocol for security purposes. Thus, there would have been no better opportunity to obtain the protocol at an earlier date than he has now.

It is unrealistic to require Harris to be concerned with the particular secret protocol that Texas would use until he knew the relevant time period during which the protocol would be used on him. Texas asserts that it has not changed its protocol since it began using the lethal injection method. But how was Harris to know at an earlier date in this case what the secret protocol was or whether the state would change it in the future? Had he filed a §1983 claim any earlier it likely would have been dismissed as unripe or for lack of standing.