WILSON, Circuit Judge,
dissenting:
I would stay Rutherford’s execution, and hold his case in abeyance until the Supreme Court reaches a decision in Hill v. Crosby, 437 F.3d 1084, 2006 WL 163607, No. 06-10621 (11th Cir. Jan. 24, 2006) (per curiam), stay of execution and cert. granted, — U.S. -, 126 S.Ct. 1189, — L.Ed.-, 2006 WL 171583 (U.S. Jan. 25, 2006) (No. 05-8794). The questions presented to the Supreme Court in Hill are virtually identical to those posed by Rutherford’s case:
(1) Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?
(2) Whether, under this Court’s decision in Nelson, a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983?
Furthermore, Rutherford’s case raises these questions with regard to Florida’s method of lethal injection, the same state method at issue in Hill. In spite of these striking similarities, the majority holds that we must follow our decision in Hill and deny Rutherford’s application for a *1096 stay, because Hill constitutes binding precedent in this circuit. In the absence of certiorari by the Supreme Court in Hill, I would agree. However, the Supreme Court’s grant of certiorari in Hill calls our decision in that case into question.
I.
In Hill, we denied a stay of execution based on our decision in Robinson v. Crosby, 358 F.3d 1281 (11th Cir.2004) (per curiam), because we found that it dealt with “the very issue” presented by Hill, which is, of course, the lethal injection method also at issue in Rutherford’s case. In Robinson, we found that Robinson sought “to avoid entirely execution by lethal injection,” and we determined that such a challenge “necessarily implicates the validity of his death sentence.” Robinson, 358 F.3d at 1285-86 (emphasis added). We therefore concluded that Robinson’s § 1983 claim was the “functional equivalent” of a successive habeas petition, and was properly dismissed by the district court for lack of jurisdiction. See id. at 1284-86. When we decided Robinson, however, we did not have the benefit of the Supreme Court’s decision in Nelson v. Campbell, which acknowledged that method-of-execution claims are not easily categorized, and that “[a] suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the ‘fact’ or ‘validity’ of the sentence itself ....” 541 U.S. 637, 643-44 124 S.Ct. 2117, 2123, 158 L.Ed.2d 924 (2004) (emphasis added).[1] Given that this careful language is at odds with our more categorical approach in Robinson, that Robinson was the basis for our decision in Hill, and that the Supreme Court has now granted certiorari in Hill to review the same issues as those presented in Rutherford’s case, there is good reason to stay Rutherford’s execution. Cf. Mobley v. Head, 306 F.3d 1096, 1096-97 (11th Cir.2000) (granting stay of execution where a forthcoming Supreme Court decision would “determine our resolution of the issues [appellant] raises in this appeal”); In re Williams, 359 F.3d 811, 815 (6th Cir.) (“The Supreme Court ... and other circuits have all granted stays of execution when the Supreme Court has taken a case to resolve an important issue germane to the action.”) (Moore, J., dissenting), cert. denied sub nom. Williams v. Taft, 540 U.S. 1206, 124 S.Ct. 1478, 158 L.Ed.2d 129 (2004).
In Robinson, we did not attribute much weight to the fact that the Supreme Court had then granted certiorari on our decision in Nelson v. Campbell, 347 F.3d 910 (11th Cir.2003), rev’d, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). See Robinson, 358 F.3d at 1283-85. We gave two reasons for this:
First, the grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law. Second, and more important, the Defendants point out that there are material factual and legal distinctions between Nelson and this case in any event.
Id. at 1284 (internal citations omitted) (emphasis added). Nelson, we explained, involved not a challenge to the lethal injection itself, as in Robinson, but rather a challenge to the “cut-down” procedure used to gain venous access prior to the *1097 injection. See id. The Supreme Court’s decision on the latter challenge, we surmised, would not affect our decision on the former. See id. at 1285. Regardless of whether one still finds this conclusion persuasive in light of the actual Nelson decision, our approach in Robinson does not require that we discount the grant of cer-tiorari in Hill. All we said in Robinson is that the grant of certiorari “alone” does not “justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law.” Robinson, 358 F.3d at 1284. We said that the “more important” factor is whether there are “material factual and legal distinctions” between the two cases. Id. Unlike Robinson in comparison to Nelson, there simply are no “material factual and legal distinctions” between Rutherford’s case and Hill — a point that neither the parties nor the district court appear to dispute. Indeed, the district court expressly found that the issue Rutherford raised is the same issue that was raised in Robinson and Hill. See Rutherford, v. Crosby, No. 06-cv-50, 2006 WL 228883 (N.D.Fla. Jan. 28, 2006).
The majority relies upon Bieghler v. Donahue, No. 06 C 136 (7th Cir. Jan. 26, 2006), stay vacated by No. 05A684, — U.S. -, 126 S.Ct. 1190, — L.Ed. -, 2006 WL 189970 (Jan. 27, 2006) in which the Seventh Circuit entered a stay of execution which the Supreme Court eventually vacated. The factual similarities between Rutherford’s case and Hill distinguish it from Bieghler. Although Bieghler involved a similar method of execution and relied on Hill for granting the stay, it did not involve the same jurisdictional question that both Rutherford’s case and Hill present. In addition, in Bieghler and unlike in Rutherford’s case, the state had offered to cure any problems with the execution method by administering additional anesthetic, which Bieghler refused. The fact that the Supreme Court vacated the Bieghler stay does not mean that it would vacate a stay in Rutherford’s case, which is factually and legally identical to Hill.
In short, Rutherford’s case is on all fours with Hill, a case from our circuit in which the Supreme Court has granted cer-tiorari to review the same issues about the same method of execution in the same state. Indeed, had the instant case preceded Hill by one day, it would be currently awaiting Supreme Court review with the execution stayed. The Supreme Court’s decision will provide us with essential guidance on the district court’s jurisdiction, if any, to entertain Rutherford’s § 1983 complaint — and thus the proper disposition of this appeal. Accordingly, we should stay Rutherford’s execution and hold his case in abeyance pending the Supreme Court’s resolution of the questions presented in Hill.
II.
The majority holds that, even assuming there is jurisdiction over Rutherford’s § 1983 action, a stay is inappropriate because Rutherford unnecessarily delayed in bringing his claim. The district court abused its discretion in reaching this conclusion. Before granting a stay, a district court “must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate delayed unnecessarily in bringing the claim.” Nelson, 541 U.S. at 649-50, 124 S.Ct. at 2126. However, the “strong equitable presumption against the grant of a stay” is appropriate only when “a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.” Id. at 650, 124 S.Ct. at 2126. As is clear from the discussion above, there was little point in Rutherford *1098 bringing his § 1983 claim until the Supreme Court granted certiorari on our decision in Hill.
Appellees contend that Rutherford could and should have raised his claim in 2000, when Florida first provided for lethal injection. The key research on which Rutherford relies, however, was not published until April of 2005.[2] Of course, if Rutherford had filed his § 1983 claim in 2005, our precedent in Robinson would have required that it be treated as a successive habeas petition and dismissed for lack of jurisdiction. See Robinson, 358 F.3d at 1284.[3] Indeed, not until the Supreme Court granted certiorari in Hill did Rutherford have reason to believe that, in this circuit, he might have a cognizable claim under § 1983. Given that the factual and legal bases for Rutherford’s claim were not fully in place until six days before his scheduled execution, he cannot fairly be charged with “unnecessary delay.” Moreover, nothing in the record before this Court indicates that Rutherford’s filing is an attempt to stall his execution merely for delay’s sake, or to “manipulate the judicial process.” See Nelson, 541 U.S. at 650, 124 S.Ct. at 2126 (internal quotations and citation omitted). Thus, the district court abused its discretion in applying a “strong equitable presumption” against a stay-an error the district court further compounded by failing to weigh carefully Rutherford’s likelihood of success on the merits and the relative harms to the parties. See id. at 649-50, 124 S.Ct. at 2126.
The district court also stated that, even if Rutherford had not delayed in bringing his claim, the claim would nevertheless fail because it does not fall within Nelson’s “narrow confines.” In other words, the district court construed Nelson to require that Rutherford demonstrate that he suffers from a “unique medical condition” which the lethal injection protocol would aggravate. Yet, this is precisely the subject of one of the questions presented to the Supreme Court in Hill (and specifically not addressed in Nelson): whether a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983. Thus, we have all the more reason to grant a stay and await the Supreme Court’s guidance.
Finally, as Hill demonstrates, a last minute stay of execution in an extraordinary case is not unique, particularly when the Supreme Court is preparing to decide an issue that controls the case’s outcome. See Mobley 306 F.3d at 1096-97; see also In re Holladay, 331 F.3d 1169 (11th Cir.2003) (granting eleventh hour application for leave to file a second habeas petition and stay of execution); Bolender v. Singletary, 60 F.3d 727 (11th Cir.1995) (per curiam) (denying eleventh hour application for certificate of probable cause but staying execution to give the Supreme Court an opportunity to consider the application). Since death by execution is an irreversible penalty, we would be remiss to permit Rutherford’s execution to proceed, only to have the Supreme Court later decide that he was entitled to pursue his claim in federal district court. This is the very *1099 purpose for the availability of a stay of execution. I respectfully dissent.
APPENDIX
IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION ARTHUR DENNIS RUTHERFORD, Petitioner, v. JAMES V. CROSBY, JR., Secretary, Florida Department of Corrections, and CHARLIE CRIST, Attorney General of Florida, Respondents.
Case No. 4:06-cv-50/MCR

ORDER

This matter is before the court on a Verified Complaint for Declaratory and In-junctive Relief filed by Arthur Rutherford through his counsel on January 27, 2006, with supporting memoranda, and an Application for Stay and Motion to Hold Proceedings in Abeyance.[1] For the reasons that follow, the court finds that the petition must be dismissed for lack of jurisdiction.[2] This case has an extensive history dating back to Petitioner’s original death sentence in December of 1986. The facts and procedural history of the case are set out in the Eleventh Circuit Court of Appeals’ opinion in Rutherford v. Crosby, 385 F.3d 1300 (11th cir.2004), cert. denied, — U.S. -, 125 S.Ct. 1847, 161 L.Ed.2d 738 (2005), and demonstrate that the Petitioner has filed previous petitions for habeas corpus, both in the state and federal courts. See e.g., Rutherford v. State, 545 So.2d 853 (Fla.1989); Rutherford v. State, 727 So.2d 216 (Fla.1998); Rutherford v. Moore, 774 So.2d 637 (Fla.2000).
Petitioner now brings the instant suit as a complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 for alleged prospective violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, claiming that death by lethal injection according to the protocol followed in Florida “creates a foreseeable risk of the gratuitous and unnecessary infliction of pain on a person being executed.” Plaintiff bases his claim on a research article co-authored by Dr. David A. Lubarsky, an anesthesiologist, and published in The Lancet. This article, “Inadequate Anaesthesia in Lethal Injection for Execution,” Vol 365, The Lancet 1412-14 (April 16, 2005), is attached to Petitioner’s petition as Attachment B and states:
Lethal injection usually consists of sequential administration of sodium thio-pental for anaesthesia, pancuronium bromide to induce paralysis, and finally potassium chloride to cause death. (Cite omitted). Without anaesthesia, the condemned person would experience asphyxiation, a severe burning sensation, massive muscle cramping, and finally cardiac arrest. Thus, adequate anaesthesia is necessary both to miti *1100 gate the suffering of the condemned and to preserve public opinion that lethal injection is a near-painless death.
Id. at 1412. The above conclusion is based on research and data from post-mortem toxicological tests conducted on condemned inmates in Arizona, Georgia, North Carolina and South Carolina, from which the researchers found that the concentrations of thiopental (sodium pento-thal) were lower than that required for surgery in 88% of the executed inmates and that 43% of the executed inmates had concentrations of thiopental consistent with awareness because they had an insufficient amount of sodium pentothal in their bloodstream to provide adequate anesthesia. (Doc. 2-1 at 7-8).[3] The article suggests that “some inmates might experience awareness and pain during execution.” The Lancet at 1412. Petitioner contends that under Florida’s lethal injection protocol there is a likelihood that he will unnecessarily suffer awareness and pain during his execution in violation of the Eighth Amendment and Fourteenth prohibition against cruel and unusual punishment.
This very same issue was recently addressed in Hill v. Crosby, 2006 WL 167585 (N.D.Fla.)(Jan. 21, 2006), wherein the district court dismissed Hill’s complaint for declaratory and injunctive relief pursuant to § 1983 for lack of jurisdiction, treating Hill’s § 1983 complaint as the functional equivalent of a successive habeas corpus petition and finding that it lacked jurisdiction to consider it as such because Hill had failed to obtain leave from the Eleventh Circuit to file it as required by 28 U.S.C. § 2244(b)(3)(A).[4] On appeal, the Eleventh Circuit Court of Appeals affirmed the district court’s order, confirming that the court lacked jurisdiction to hear Hill’s complaint without his having first obtained leave to file a successive habeas corpus petition pursuant to the requirements of 28 U.S.C. § 2244(b)(3)(A). Hill v. Crosby, 2006 WL 163607 (11th Cir., Jan. 24, 2006). Thereafter, the United States Supreme Court stayed Hill’s execution and granted his petition for a writ of certiorari. Hill v. Crosby, 2006 WL 171583 (Jan. 25, 2006).[5]
*1101 Ruling on Hill’s § 1983 claim, the district court correctly relied on the binding precedent of this circuit in Robinson v. Crosby, 358 F.3d 1281 (11th Cir.2004), by treating Hill’s claim as the functional equivalent of a successive habeas corpus petition. In Robinson, the petitioner alleged that “lethal injection causes those who are executed pain and suffering while they are paralyzed and unable to communicate,” in violation of their Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Id. at 1282. The district court construed Robinson’s § 1983 action as the functional equivalent of a successive habeas corpus petition which would subject him to the requirements of 28 U.S.C. § 2244. In concluding that the district court properly dismissed Robinson’s § 1983 complaint for lack of jurisdiction the Eleventh Circuit held:
A § 1983 claim seeking relief-including a TRO, preliminary injunction, or a stay of execution-from a sentence of death as cruel and unusual punishment is the “functional equivalent” of a successive habeas petition. The district court lacked jurisdiction to consider Robinson’s claim because he failed to apply to this Court for permission to file a successive habeas petition. We further note that such an application to file a successive habeas petition would be denied in any event. See In re Provenzano, 215 F.3d 1233, 1235-36 (11th Cir.2000), cert. denied, 530 U.S. 1256, 120 S.Ct. 2710, 147 L.Ed.2d 979 (2000) (concluding that a claim that lethal injection constitutes cruel and unusual punishment does not meet the requirements of 28 U.S.C. § 2244(b)(2)(A) or (B)).
Id. at 1284 (remaining internal cites omitted). The issue presented in Robinson is essentially the issue presented here, i.e. whether a district court has jurisdiction to consider an inmate’s claim brought pursuant to 42 U.S.C. § 1983 alleging that “by using a succession of three chemicals that will cause unnecessary pain in the execution of a sentence of death,” the Petitioner will be deprived “of his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment,” a question the Eleventh Circuit answered in the negative in Robinson. Petitioner in this case, however, has not addressed Robinson, nor has he attempted to distinguish his case from Hill. The issue raised by Petitioner here was raised, addressed, and disposed of in both Robinson and Hill. Accordingly, following and applying the law of this circuit as set forth in Robinson and Hill, this court, concludes that Petitioner’s § 1983 complaint seeks to avoid his execution by lethal injection and therefore necessarily implicates the validity of *1102 his death sentence.[6] Consequently, Petitioner’s claim and request for relief is the functional equivalent of a successive habe-as corpus petition and absent his having first obtained leave to file a successive petition from the Eleventh Circuit pursuant to 28 U.S.C. § 2244(b)(3)(A), this court is without jurisdiction to entertain Petitioner’s petition. Notwithstanding, even assuming Petitioner has a cognizable claim under 42 U.S.C. § 1983, this court would nonetheless conclude that he is not entitled to relief due to unnecessary delay in bringing his claim.[7] See Gomez v. United States Dist. Court for N. Dist. of Cal., 503 U.S. 653, 654, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992)(per curiam)(“A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.”). Petitioner, however, claims that The Lancet article is the “first empirical research published regarding lethal injection.” (Doc. 3 at n.l). While The Lancet article itself may be new, the factual basis of Petitioner’s claim (that the doses of the anesthetic sodium pentothal may be insufficient thus permitting those injected to experience the feelings of being suffocated and having a heart attack, but unable to express their pain by virtue of being paralyzed by pan-curonium), has been raised and disposed of in other cases. As the court in Robinson noted:
the affidavits [accompanying Robinson’s section 1983 complaint] discuss the drugs used in the lethal injection. Three affidavits that Robinson filed in the district court are copies of affidavits from the case of State of Texas v. Jesus Flores, No. 877994. These affidavits address the effects of the drugs used during lethal injection, how they each cause pain and suffering, and particularly how the pancuronium bromide chemical paralyzes the person and masks the pain and suffering being incurred.
Robinson, 358 F.3d at 1285 n. 4. See also Brown v. Crawford, 408 F.3d 1027 (8th Cir.2005); Bieghler v. State, 839 N.E.2d 691(Ind.2005). Moreover, Florida’s lethal injection methods were subjected to a full evidentiary hearing in 2000 in Sims v. State, 754 So.2d 657 (Fla.2000), and Petitioner could have challenged the procedure after the Sims decision was rendered. Thus, the petition in this case raises no true issues of newly discovered evidence.
Additionally, Petitioner has offered no reason for his delay in bringing a § 1983 action until just days before his scheduled execution. The court notes there is no requirement to exhaust state proceedings prior to bringing a § 1983 claim.[8] In general, exhaustion of state remedies is not a prerequisite to filing an action under § 1983, even in the case of state prisoners, unlike federal habeas corpus actions brought pursuant to 28 U.S.C. § 2254 where exhaustion of state remedies is re *1103 quired. See Heck v. Humphrey, 512 U.S. 477, 480, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994); Patsy v. Board of Regents of Fla., 457 U.S. 496, 501 and 509, 102 S.Ct. 2557, 2560 and 2564, 73 L.Ed.2d 172 (1982). As stressed by the Supreme Court in Nelson v. Campbell, 541 U.S. 637, 649-50, 124 S.Ct. 2117, 2126, 158 L.Ed.2d 924 (2004):
A stay is an equitable remedy, and “[e]quity must take into consideration the State’s strong interest in proceeding with its judgment and ... attempts] at manipulation.” [Gomez, 503 U.S. at 654, 112 S.Ct. at 1653], Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State’s significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.
(remaining internal cites omitted). See also In re Hicks, 375 F.3d 1237, 1241 (11th Cir.2004); Harris v. Johnson, 376 F.3d 414, 418 (5th Cir.2004)(“By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.”); White v. Johnson, 429 F.3d 572, 574 (5th Cir.2005)(“White has been on death row for more than six years, and only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row .... White has no excuse for delaying his claim until the eleventh hour, and he cannot argue that ‘he was unaware of the State’s intention to execute him by injecting the three chemicals he now challenges.’ ” (citing Harris, supra, 376 F.3d at 417)); White v. Livingston, — U.S. -, 126 S.Ct. 601, 163 L.Ed.2d 502 (2005)(denial of stay of execution).[9]
Finally, even assuming Petitioner had not delayed in bringing his current action, the court would nonetheless find that Petitioner’s claim fails to fall within the narrow confines of Nelson. Here Petitioner is challenging Florida’s standard protocol involving lethal injection and has made no claim, as the petitioner did in Nelson, that due to his unique medical situation the lethal injection protocol as applied to him constitutes cruel and unusual punishment in violation of the Eighth Amendment. Therefore, Petitioner is in effect challenging the validity of his sentence and is thus subject to the laws governing federal habe-as corpus petitions. This court is without jurisdiction to entertain Petitioner’s petition without his first complying with the requirements of 28 U.S.C § 2244(b)(3)(A).
Accordingly, it is hereby ORDERED and ADJUDGED that Petitioner’s Verified Complaint for Declaratory and Injunctive Relief (doc. 2) is hereby DISMISSED for lack of jurisdiction. Petitioner’s Application for Stay of Execution and Motion to Hold Proceedings in Abeyance (doc. 4) is DENIED. No stay of execution shall issue in this case.
DONE and ORDERED this 28th day of January, 2006.

s/ M. Casey Rodgers

M. CASEY RODGERS *1104 United States District Judge

. Although the Court also recognized that, under some circumstances, a method-of-execution challenge could implicate the "fact” of the sentence itself, the Court's language was not absolute. See Nelson, 541 U.S. at 644, 124 S.Ct. at 2123 ("[A] constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.”) (emphasis added).

. The district court did not consider the April 2005 Lancet article to be significant, because courts had rejected factually similar arguments made prior to the article’s publication. There is a difference, however, between how much Rutherford might have relied upon the presentation of losing arguments in court, and how much he might have relied upon a peer-reviewed article published in a scientific journal.

. Had Rutherford brought his claims then as a successive habeas petition, they would have been denied as well. See Robinson, 358 F.3d at 1284; In re Provenzano, 215 F.3d 1233, 1236 (11th Cir.2000) (per curiam).

. For reasons explained infra, the court will hereinafter refer to the complaint as a petition and to plaintiff as petitioner.

. While Respondents argue that Rutherford's petition should be dismissed for failure to state a cause of action as opposed to lack of jurisdiction, a federal court may determine sua sponte that it lacks the jurisdiction to entertain the matter before it. Vermeulen v. Renault., U.S.A., Inc., 985 F.2d 1534, 1542 (11th Cir.1993); see also, University of South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir.1999).

. Florida’s lethal injection procedure is outlined in detail in Sims v. State, 754 So.2d 657, 666 (Fla.2000), and it is assumed that the same procedure will be used in Petitioner’s execution. Dr. Lubarsky states in his affidavit, attached to Petitioner’s petition as Attachment A, that on the basis of information contained in Sims the procedure used in Florida is substantially similar to the procedure used in the states which provided the toxicology data. See Attachment A at 6.

. 28 U.S.C. § 2244(b) provides as follows:
(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior appeal shall be dismissed.
(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(1) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfin-der would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2244(b)(3)(A) further provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.”

.The two questions presented to the Court in support of the petition for certiorari review are as follows:
1. Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state pris *1101 oner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?
2. Whether, under the Court's decision in Nelson v. Alabama Dept. of Corrs., 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983?
Notably, on January 27, 2006, the United States Supreme Court vacated a stay of execution issued by the Seventh Circuit Court of Appeals in Bieghler v. Donahue, Case No. 06-1300. See Donahue v. Bieghler, Case No. 05A684, - U.S. -, 126 S.Ct. 1190, - L.Ed.2d -, 2006 WL 189970 (2006). The Seventh Circuit had granted the stay based solely on the Supreme Court’s grant of the writ of certiorari in Hill v. Crosby. However, in Bieghler the lower courts did not recharac-terize Bieghler's § 1983 claim as a successive habeas corpus petition and therefore the issue before the Supreme Court on petition for cer-tiorari in Bieghler and Hill was not the same.

.While this court acknowledges that a writ of certiorari was granted in Hill's case and that the claim and request for relief sought by Petitioner are identical to Hill's, the grant of certiorari in Hill's case does not change the law of this circuit or justify this court's granting a stay of execution on the possibility that the Supreme Court may overturn Eleventh Circuit law. See Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir.2004); Ritter v. Thigpen, 828 F.2d 662, 665-66 (11th Cir.1987).

. The court seriously doubts that Petitioner’s claim in any event would fall within the narrow confines of Nelson v. Campbell, 541 U.S. 637, 649, 124 S.Ct. 2117, 2125, 158 L.Ed.2d 924 (2004)(noting that its holding "is extremely limited.”).

. Petitioner has also not specifically addressed his failure to comply with the requirements of The Prison Litigation Reform Act of 1995 nor argued why he would be exempt from these requirements. See 42 U.S.C. § 1997e(a).

. The Supreme Court also recognized in Nelson that “the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right.” Nelson, 541 U.S. at 649, 124 S.Ct. at 2125-26.