# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2748

_____

|  |  |  |
|---|---|---|
| | * | |
| Terrick Terrell Nooner, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| Don William Davis, | * | Eastern District of Arkansas. |
| | * | |
| Intervenor-Appellee | * | |
| | * | |
| v. | * | |
| | * | |
| Larry Norris, in his official capacity | * | |
| as Director, Arkansas Department | * | |
| of Correction; Gaylon Lay, in his | * | |
| official capacity as Warden, | * | |
| Arkansas Department of | * | |
| Correction, Cummins Unit; Wendy | * | |
| Kelly, in her official capacity as | * | |
| Deputy Director of Health and | * | |
| Correctional Programs, Arkansas | * | |
| Department of Correction; John | * | |
| Byus, in his official capacity as | * | |
| Administrator, Correctional | * | |
| Medical Services, Arkansas | * | |
| Department of Correction; DOES, | * | |
| 1-50, unknown executioners, in | * | |
| their official capacities as | * | |
| employees and/or agents of the | * | |
| Arkansas Department of | * | |
| Correction, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: March 15, 2007
Filed: July 9, 2007
_____

Before COLLOTON, HANSEN, and GRUENDER, Circuit Judges.
_____

HANSEN, Circuit Judge.

The district court granted Don William Davis a preliminary injunction staying his execution to permit him to litigate the constitutionality of Arkansas's lethal injection protocol in a suit brought pursuant to 42 U.S.C. § 1983. In this interlocutory appeal, see 28 U.S.C. § 1292(a)(1), the Appellants (collectively, "the State") contend that the district court abused its discretion in granting the preliminary injunction.[1] We agree, and accordingly we reverse the judgment of the district court, dissolve the preliminary injunction it imposed, and vacate the stay of execution it entered.

I.

In 1993, the Supreme Court of Arkansas affirmed Mr. Davis's conviction for capital murder and his sentence of death by lethal injection, Davis v. State, 863 S.W.2d 259 (Ark. 1993), cert. denied, 511 U.S. 1026 (1994), and in 2001, affirmed the denial of his petition for postconviction relief, Davis v. State, 44 S.W.3d 726 (Ark. 2001). In 2005, we affirmed the denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, see Davis v. Norris, 423 F.3d 868 (8th Cir. 2005), and the Supreme Court rejected his untimely petition for certiorari on April 17, 2006.

_____

[1]Terrick Nooner is named as an appellee in the caption of this interlocutory appeal, but the preliminary injunction and the stay entered by the district court affect only Mr. Davis, and accordingly, our opinion does not address Mr. Nooner.

-2-

On May 4, 2006, Mr. Davis filed a motion to intervene as a party plaintiff in this § 1983 action, which Terrick Nooner originally filed on May 1, 2006. The lawsuit challenges Arkansas's three-chemical lethal injection protocol, asserting that the State's protocol creates a significant risk of inflicting severe pain in the administration of the death sentence, and that the State's use of this protocol demonstrates deliberate indifference to the plaintiffs' serious medical needs. Specifically, the complaint alleges that the State's protocol presents a risk of error in administering the drugs that could result in inadequate anesthetization, creating a substantial risk that the first injection (two grams of sodium thiopental) will fail to render him unconscious, leaving him paralyzed by the second chemical (pancuronium bromide), and suffering severe pain by the subsequent administration of the third chemical (potassium chloride). Additionally, the complaint references four prior executions alleged to have been "botched."

The district court granted Mr. Davis's motion to intervene on May 26, 2006. Before that ruling was filed, however, the governor had set an execution date of July 5, 2006, for Mr. Davis. Mr. Davis then sought a preliminary injunction to stay his impending execution by means of the current protocol. The State resisted, arguing that the claim was not likely to succeed on the merits and that the public interest and principles of equity, including unjustified delay in bringing the claim, weighed heavily against the grant of an injunction. The district court rejected these arguments and granted the preliminary injunction on June 26, 2006, staying Mr. Davis's execution. The State filed this appeal.[2]

---

[2]On June 30, 2006, the State filed its notice of appeal and moved this court to summarily vacate the district court's order granting a preliminary injunction staying the execution. Before we could rule on the matter, the State also applied to the Supreme Court to vacate the stay before the originally set execution date, but the Court declined to vacate the stay in an order dated July 5, 2006. On July 13, 2006, we entered an administrative order denying the motion to vacate pending before this court, and this appeal proceeded.

II.

"We generally review a district court's decision to stay execution for an abuse of discretion." Roberts v. Norris, 415 F.3d 816, 819 (8th Cir. 2005) (citing Bowersox v. Williams, 517 U.S. 345, 346 (1996)). "A district court abuses its discretion when it applies an incorrect legal standard." Lauer v. Barnhart, 321 F.3d 762, 764 (8th Cir. 2003). After carefully considering the record and the standards used by the district court, we conclude that the district court abused its discretion in granting the preliminary injunction and stay of execution. See Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967 (8th Cir. 2005) ("An abuse of discretion occurs when the district court bases its decision on an erroneous application of the law or a clearly erroneous finding of fact.").

A stay of execution is an equitable remedy, and an inmate challenging a state's lethal injection protocol through a § 1983 action is not entitled to a stay of execution as a matter of course. Hill v. McDonough, 126 S. Ct. 2096, 2104 (2006); Nelson v. Campbell, 541 U.S. 637, 649 (2004). The Supreme Court reemphasized in Hill that "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." 126 S. Ct. at 2104; see also Barefoot v. Estelle, 463 U.S. 880, 895 (1983) (requiring a "significant possibility" of success and "a likelihood that irreparable harm will result" absent a stay). The Court also noted in Hill that "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." 126 S. Ct. at 2104. Finally, in this context, a court "must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" Id. (quoting Nelson, 541 U.S. at 650). In other words, "before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily

-4-

in bringing the claim," which counsels against the entry of an equitable remedy. Nelson, 541 U.S. at 649-50.

The district court rejected the State's assertion of unnecessary delay, finding no delay at all and therefore not applying the presumption against the grant of a stay, which arises when the claim could have been brought in time to consider the merits without requiring a stay. The district court found it was sufficient that Mr. Davis had moved to join this suit "before the State set his execution date and shortly after he exhausted all means for challenging his conviction." (Appellants' Add. at 5.) We conclude that this is not the correct standard for determining delay in this context.

Once a state inmate's sentence of death has become final on direct review in the state's courts,[3] there is no impediment to filing a § 1983 action challenging the constitutionality of a state's lethal injection protocol as long as lethal injection is the established method of execution, the protocol is known, and no state administrative remedies are available. See Gomez v. U. S. Dist. Court for the N. Dist. of Calif., 503 U.S. 653, 653-54 (1992) (criticizing an inmate for bringing a § 1983 method of execution claim (challenging lethal gas) shortly before his execution date when the claim was not raised earlier but "could have been brought more than a decade ago"); see also Jones v. Allen, 485 F.3d 635, 640 (11th Cir.) (finding that there was no reason for waiting until 2006 to challenge lethal injection where the inmate's conviction became final on direct review in 1988, and the legislature adopted lethal injection in 2002 while the inmate's habeas petition was pending), cert. denied, 127 S. Ct. 2160 (2007); Cooey v. Strickland, 479 F.3d 412, 421-22 (6th Cir. 2007) (finding that because a § 1983 challenge to a lethal injection protocol must accrue at

---

[3]We note that direct review includes certiorari review by the United States Supreme Court. See Lawrence v. Florida, 127 S. Ct. 1079, 1083 (2007) (explaining that "'direct review' has long included review by this Court"); Barefoot, 463 U.S. at 887 (the process of direct review includes the right to petition the Supreme Court for a writ of certiorari when a federal question is involved).

some point before the time when the lethal injection protocol is actually imposed, "it stands to reason that the next most appropriate accrual date [is] upon conclusion of direct review in the state court or the expiration of time for seeking such review," and noting that the accrual date must be adjusted if lethal injection was not adopted until some later date); Smith v. Johnson, 440 F.3d 262, 263 (5th Cir. 2006) (noting the Fifth Circuit holds that a method of execution challenge "'may be filed any time after the plaintiff's conviction has become final on direct review'") (quoting Neville v. Johnson, 440 F.3d 221 (5th Cir. 2006)). But see Nelson, 541 U.S. at 650 (noting that other limitations may apply to an inmate's ability to bring a § 1983 claim, such as limitations imposed by the Prison Litigation Reform Act of 1995, "requir[ing] that inmates exhaust available state administrative remedies before bringing a § 1983 action challenging the conditions of their confinement"). For purposes of this case, the State acknowledged during oral argument that an Arkansas inmate can challenge the lethal injection protocol immediately after direct review.

"[A] death sentence cannot begin to be carried out by the State while substantial legal issues [concerning the conviction or sentence] remain outstanding." Barefoot, 463 U.S. at 888. Upon completion of collateral review, however, the State is free to set an execution date, and there is a strong likelihood that any challenge to the lethal injection protocol brought thereafter will be interrupted by the establishment of an execution date. See Calderon v. Thompson, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief."); Jones, 485 F.3d at 639-40 & n.2 (noting that "[a]s a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution," making it likely that an execution date will "be set promptly upon completion of collateral review"). At that point, there can be no doubt that execution is imminent, and this imminency weighs against the grant of a stay where the inmate has delayed unjustifiably in bringing a challenge to the lethal injection protocol. See Cooey, 479 F.3d at 419 (stating that waiting until "the point of imminency plus exhaustion of federal collateral remedies adds a significant period of

delay . . . and disrupts the final yet vital balance between state and federal relations"). The Supreme Court has clearly set forth "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Nelson, 541 U.S. at 650; see Jones, 485 F.3d at 639-40 n.2 ("Waiting to file suit until the Supreme Court has denied *certiorari* review of an inmate's federal habeas petition . . . is simply too late to avoid the inevitable need for a stay of execution.").

The proper inquiry, therefore, "is whether [Mr. Davis] could have brought his claim 'at such a time as to allow consideration of the merits without requiring entry of a stay.'" Jones, 485 F.3d at 641 (quoting Nelson, 541 U.S. at 650.) The district court did not give proper consideration to this inquiry. Our review of the record reveals that direct review of Mr. Davis's conviction and sentence was completed in 1994, well over a decade before he challenged the lethal injection protocol. Lethal injection has been the primary method of execution in Arkansas since 1983, and the written protocol document challenged here has been in existence since 1996, with no allegation that the protocol has been altered at any time. See White v. Johnson, 429 F.3d 572, 574 (5th Cir. 2005) (concluding that a § 1983 challenge to the lethal injection procedure brought after waiting six years on death row was dilatory when the same procedure had been in place the entire time). The complaint refers to four prior allegedly "botched" executions to demonstrate the State's knowledge of failures in the protocol, but three of these had already occurred before the conclusion of Mr. Davis's direct review in 1994. The other occurred in May of 2000, approximately six years before Mr. Davis attempted to bring this claim. Mr. Davis at no time attempted to raise this claim during the time his state postconviction or federal habeas proceedings were pending, and he offers no justification for waiting until 2006 to challenge the protocol. See Neville, 440 F.3d at 223 (finding it improper to grant equitable relief where no excuse was offered for the delay). Mr. Davis's delay gives rise to the equitable presumption against a stay in this case, and he has offered no basis for overcoming that strong presumption. See Gomez, 503 U.S. at 653-54

(vacating a stay of execution due to "abusive delay" for which there was "no good reason," and refusing to consider a challenge to a method of execution which, at least according to the dissent, had considerable merit); Smith, 440 F.3d at 263 (affirming the dismissal of a § 1983 complaint challenging lethal injection and denying a motion for stay where the inmate failed to provide a reasonable justification for not filing the claim until nine years after his direct appeal had been final); White, 429 F.3d at 574 (not deciding whether inmate had stated a claim because "'even if he does, he is not entitled to the equitable relief he seeks' due to his dilatory filing" (quoting Harris v. Johnson, 376 F.3d 414, 417 (5th Cir. 2004)).

Mr. Davis argues that his case is controlled by this court's recent opinion in Taylor v. Crawford, 445 F.3d 1095 (8th Cir. 2006), because Taylor was allowed to proceed with the merits of his claim where he brought suit after completing habeas review and before an execution date had been set. Mr. Davis, however, overlooks the fact that the issue of unjustified delay by the inmate was not raised or litigated in Taylor. While we noted in Taylor that the inmate had filed suit over six months before the death warrant was issued, id. at 1096-97, this reference served only to emphasize the district court's failure to move the case to a hearing. A prompt hearing on the merits in that case could have resolved the issue before an execution date was set, eliminating the need for a stay. Any delay on Mr. Taylor's part was never raised. Consequently, the Taylor opinion does not inform our decision as to Mr. Davis's unjustified delay in bringing his claim.

Nor do we believe that the Supreme Court's recent decision in Panetti v. Quarterman, No. 06-6407, 2007 WL 1836653 (June 28, 2007), is applicable to Mr. Davis's case. Panetti deals with mental competence to be executed, a condition of the mind which may not manifest itself until so late a time that a stay becomes necessary in order to evaluate properly the asserted mental deficiency. That cannot be said about an execution protocol which, as we have pointed out, has been long known and unchanged in its implementation for years, thereby permitting an evaluation of its

constitutionality without the necessity of the issuance, in effect, of an eleventh hour stay.

## III.

Because the district court failed to apply the correct legal standard, we reverse the district court's grant of a preliminary injunction, and we vacate the stay of execution it issued in this case.

_____