# United States Court of Appeals
## For the First Circuit

No. 16-1372

UNIÓN DE EMPLEADOS DE MUELLES DE PUERTO RICO, INC.,

Plaintiff, Appellant,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Lipez, and Kayatta, Circuit Judges.

Eddie Q. Morales for appellant.
John P. Sheridan, with whom Kevin J. Marrinan and Marrinan &
Mazzola Mardon, P.C. were on brief, for appellee.

February 28, 2018

**LIPEZ**, **Circuit Judge**.  This case involves a dispute between an international union -- the International Longshoremen's Association ("ILA") -- and one of its affiliated local unions in San Juan, Puerto Rico -- Unión de Empleados de Muelles de Puerto Rico, Inc. ("UDEM") -- regarding the validity of the ILA's decision to place UDEM into a trusteeship after UDEM opposed the ILA's plan to merge it with other local unions.  In the proceedings below, initiated when UDEM filed a lawsuit against the ILA, the district court held that the trusteeship was lawfully imposed, denied UDEM's motion for a preliminary injunction against the trusteeship, and struck UDEM as a party because it did not have authorization from the trustee to sue the ILA.  Having stricken the sole plaintiff, the district court dismissed the complaint.

Appealing from the dismissal of its complaint and the denial of its motion for a preliminary injunction, UDEM contends that the trusteeship was invalid because UDEM voted to disaffiliate from the ILA before the trusteeship was imposed and because UDEM was placed in trusteeship for reasons that are improper under Title III of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 461-66, which governs the local union's rights vis-à-vis the international.  The ILA responds that UDEM's disaffiliation vote was ineffective because it did not follow the procedures in the ILA constitution for disaffiliation, including providing adequate notice of the vote, and that the trusteeship

- 2 -

was imposed for purposes that were legitimate under the LMRDA. Because the trusteeship was valid, the ILA asserts, UDEM could not initiate litigation without authorization of the trustee, and therefore its complaint was properly dismissed. In addition, the ILA now argues that UDEM's appeal is moot because the trusteeship has ended.

After considering the parties' supplemental briefing on mootness, we hold that UDEM's appeal from the denial of its motion for a preliminary injunction is moot due to the termination of the trusteeship. However, because UDEM's claims for declaratory relief and damages present a live controversy despite the end of the trusteeship, the remainder of the appeal is not moot. On the merits of the remaining appeal, we affirm the order of the district court. UDEM's vote to disaffiliate before the ILA placed it in trusteeship was invalid under the ILA constitution, and the trusteeship was lawfully imposed under the LMRDA, leaving UDEM without authority to bring this lawsuit absent permission from the trustee. Because UDEM did not receive authorization from the trustee, the district court properly struck UDEM as a plaintiff and dismissed the case.

## I.

## A.   Initial Proceedings in the District Court

On June 3, 2015, UDEM filed suit against the ILA under Title III of the LMRDA, see 29 U.S.C. § 464, challenging on

numerous grounds the lawfulness of the trusteeship imposed on UDEM by the ILA. UDEM sought a declaratory judgment that the trusteeship was invalid, a permanent injunction prohibiting the ILA from continuing the trusteeship, a permanent injunction "prohibiting ILA from interfering with its operations and management," and damages.

After the ILA answered the complaint, UDEM filed a motion for a preliminary injunction. In the motion, UDEM alleged that it had disaffiliated from the ILA at a meeting of its membership on May 9, prior to being informed of the emergency trusteeship on May 12, and thus the ILA could not lawfully impose the trusteeship. Further, UDEM argued that the trusteeship was imposed for purposes that were illegitimate under the LMRDA, including preventing UDEM's disaffiliation, penalizing UDEM for opposing a proposed merger, and circumventing the grievance and arbitration procedure in the work-sharing agreement between UDEM and other local unions.

The ILA then filed an opposition to UDEM's motion for a preliminary injunction and a motion to strike UDEM as a plaintiff, arguing that UDEM in fact did not disaffiliate before the trusteeship was imposed because it failed to give notice to its members that a vote on disaffiliation was being held, as required for a disaffiliation vote to be effective under the ILA constitution. Additionally, the ILA argued that the purposes for which the trusteeship was imposed -- UDEM's opposition to the

- 4 -

merger, financial misconduct, undermining of collective bargaining relationships with employers, and refusal to cooperate with the work-sharing agreement -- were all legitimate under the LMRDA. Because UDEM was under a lawful trusteeship at the time the suit was filed, the ILA contended, no one could file a complaint in UDEM's name without the authorization of the trustee. The old officers of UDEM, who were removed when the trusteeship was put in place, no longer had authority to initiate this action on behalf of UDEM, and, if they sued at all, should have done so individually.

The case was referred to a magistrate judge, who held a hearing on both motions and issued a report and recommendation.

## B.   The Magistrate Judge's Findings of Fact

UDEM, which was founded in 1938, represented certain workers in the Port of San Juan. In 1961, after UDEM affiliated with the ILA, it became known as Local 1901 of the ILA. René A. Mercado-Álvarez ("Mercado") was elected president of UDEM in 2012 and was president during the time relevant to this case.

In addition to UDEM, there were three other local ILA unions in the Port: Local 1575, Local 1740, and Local 1902. The present dispute began in January 2015 when Horizon Lines, a major stevedoring company, closed its operations in the Port and was replaced by another stevedoring company, Luis Ayala Colón

("Ayala").[1]  Prior to closing, Horizon Lines employed members of ILA Local 1575 under a collective bargaining agreement ("CBA") with that union.  Following the closure of Horizon Lines, Local 1575 asserted that its members had the right to work for Ayala because, pursuant to the CBA with Horizon Lines, Ayala was a successor employer.  On the other hand, UDEM and Locals 1902 and 1740 each had existing CBAs with Ayala and believed that they, not Local 1575, were entitled to work for Ayala in Horizon Lines's former terminals.

In February and March of 2015, the ILA held a series of meetings with the four locals involved in the dispute over bargaining with Ayala.  At those meetings, ILA representatives took the position that the other locals needed to accommodate Local 1575 so that its members would not be out of work, and they proposed a work-sharing agreement to achieve that goal.  UDEM and Local 1902 both opposed the proposed arrangement, and no agreement among the locals was reached.  Subsequently, the ILA's president wrote a letter to UDEM and Local 1902 directing them to execute the work-sharing agreement or "more stringent measures" would be taken against them.  Mercado, the president of UDEM, testified that he understood this threat to mean possible merger of the local unions or a trusteeship.

---

[1] A chronology of important dates is provided as an appendix to help make sense of the complex sequence of events in this case.

At the end of March, all four locals consented to a work-sharing agreement that had been drafted by Mercado. Following the ratification of that agreement, the ILA informed the locals that, in order to implement it, UDEM and Locals 1902 and 1740 would have to accept transfers of some unemployed members of Local 1575 to jobs held by their members, even though such transfers were not expressly required in the agreement. The ILA was later informed that UDEM had not complied with this directive.

On April 14, the leadership of UDEM met with ILA officials, who told Mercado that the ILA was planning to merge the locals and that the reason for the merger was the dispute with Local 1575. After learning of the ILA's intention to merge the locals, Mercado called a meeting of UDEM's executive board on April 23. The board voted unanimously against a potential merger and in favor of disaffiliating from the ILA. Following this vote, however, Mercado continued to refer to UDEM as affiliated with the ILA.[2]

On May 1, the ILA sent a letter to members of the four local unions explaining that it had decided that merging the locals

---

[2] The magistrate judge "harbor[ed] real doubts" about whether this vote actually occurred, but nonetheless assumed that it did because she concluded, as we do, that this vote had no legal significance because it was not a vote of the membership of UDEM. UDEM does not contend that this vote had the effect of disaffiliating UDEM from the ILA, a position that is consistent with Mercado's actions noted above.

was the best course of action and that it would move forward with that plan. A few days later, it informed the locals that Local 1740's charter would be amended to add job classifications that were currently included in UDEM's charter. Mercado saw this move as a first step toward removing those job classifications from UDEM, as the ILA generally did not permit two locals to cover the same job classifications.

On May 8, the ILA informed UDEM's membership that a meeting would be held on May 11 to discuss the merger. The letter reiterated the reasons that the ILA felt the merger was necessary, and it alleged that Mercado had spread false information to UDEM's membership about the merger. On May 9, the day after that letter was sent, Mercado called an emergency UDEM membership meeting. At the meeting, a motion was put forth for

> the Board of Directors to continue making the efforts that it understands pertinent as up to the present and that every effort be made which is not limited to any action which must be taken to protect [the] Union and for every action taken by the Board to be accepted, including the disaffiliation from the ILA.

The motion was "seconded unanimously."[3] A motion was then made to reject the merger, which was also unanimously approved. The

---

[3] This is the vote that is at the heart of the controversy between the parties regarding the validity of the trusteeship. UDEM contends that the adoption by the membership of this motion constituted a valid vote to disaffiliate from the ILA because it served to ratify the April vote on disaffiliation by the executive board. As we explain in detail below, the district court concluded

membership also voted to inform the ILA that UDEM did not accept the merger, but they did not discuss informing the ILA that they had voted to disaffiliate.

Few members of UDEM showed up for the ILA's May 11 meeting, and the ILA was informed that Mercado was at a nearby location attempting to dissuade UDEM members from attending. An ILA representative tried to convince Mercado to attend the meeting and air his concerns. Although Mercado testified that, in declining this invitation, he told the representative that UDEM had voted to disaffiliate from the ILA, the magistrate judge found more credible the ILA representative's testimony that Mercado did not mention disaffiliation.[4]

That same day, Mercado sent the ILA a letter informing it that UDEM had unanimously voted to oppose the merger. It did not mention disaffiliation. The next day, May 12, Mercado sent another letter to the ILA stating that UDEM had voted to disaffiliate. Also on May 12, the ILA sent a letter to Mercado stating that, following an investigation into UDEM's conduct, the

that this vote was invalid because UDEM members were not provided with sufficient notice that a meeting was being held to vote on disaffiliation.

[4] The timing of the ILA's knowledge of UDEM's vote on disaffiliation is important to the magistrate judge's conclusion, discussed in section III.B infra, that preventing UDEM's disaffiliation was not a purpose of the trusteeship because the ILA did not know of UDEM's plans to disaffiliate.

ILA had decided to place UDEM in an emergency trusteeship.[5]  Mercado testified that the trusteeship letter arrived after he sent the disaffiliation letter to the ILA and that, in fact, he had written the disaffiliation letter on May 11, 2015, per its dateline, but had failed to send it that day due to problems with UDEM's fax machine.  The magistrate judge concluded that this testimony was not credible because the fax machine appeared to be working when Mercado sent the letter opposing the merger, and there was no reason why Mercado would write two different letters on the same day and fax them separately.  Instead, the magistrate judge found that the disaffiliation letter was sent only after Mercado learned of the emergency trusteeship, and that therefore the ILA did not know about UDEM's disaffiliation vote prior to imposing the trusteeship.

---

[5] In relevant part, the letter stated:

> After receiving numerous complaints regarding Local 1901's practices and Local 1901's refusal to honor its obligations under a work sharing agreement entered into by Locals 1901, 1902, 1575, and 1740, I conducted an investigation into these matters. I have determined that it is necessary to impose an emergency trusteeship on Local 1901 in accordance with Article XXI of the ILA Constitution to correct financial malpractice, to assure the performance of collective bargaining agreements, to assure the performance of the duties of a collective bargaining representative, to restore democratic procedures, and to otherwise carry out the objectives and purposes of the ILA.

On May 14, Mercado again wrote to the ILA, stating that the imposition of the trusteeship was illegal under the ILA's constitution and that the ILA and UDEM should "go before the corresponding forums"[6] to resolve the legality of the trusteeship. The ILA did not respond to the letter. UDEM then held another membership meeting on May 19, where the membership voted to "ratify" the previous decision to disaffiliate from the ILA.

The ILA constitution requires that an emergency trusteeship be ratified by the ILA after it conducts a fair hearing on the charges against the union and its officers. To that end, two ILA officers, James H. Paylor and Bernard Dudley, were appointed to a committee to investigate misconduct by UDEM and Mercado. On May 26, Paylor filed written charges with the ILA alleging misconduct by Mercado and UDEM, including breaching UDEM's commitments under the work-sharing agreement among the locals, taking action to turn union members against the merger, and undermining collective bargaining with employers. On June 1, Paylor amended the charges to allege financial misconduct by Mercado. Following the receipt of Paylor's recommendation that the trusteeship be continued, three ILA officers -- John Daggett,

---

[6] Although it is not clear from the record what Mercado meant by "corresponding forums," it appears to be a reference to UDEM's position that the grievance and arbitration provisions of the work-sharing agreement between the locals applied to the ILA's imposition of the trusteeship, despite the ILA not being a party to the agreement.

Peter Clark, and Bernard O'Donnell -- were appointed by the president of the ILA to conduct a hearing on the charges against UDEM.[7]  The hearing was held on June 11 and was attended by Mercado and UDEM's vice president, Ramón Rodríguez, along with counsel.

At the hearing, counsel for UDEM insisted that UDEM had disaffiliated and that Mercado was representing UDEM as a separate entity, not as a local of the ILA.  Based on those statements, Mercado was told that there was no reason for him to be there unless he would appear as a representative of Local 1901.  Mercado started to leave, but a lawyer for the ILA convinced him to stay.  Mercado continued to identify himself as a representative of a disaffiliated UDEM, rather than Local 1901, however, causing someone on the hearing committee to again state that there was nothing else to discuss, and Mercado left.  The ILA sustained the charges against Mercado and the Union and approved the trusteeship, removing Mercado as president of UDEM and expelling him from the ILA.

## C.   Legal Conclusions of the Magistrate Judge and District Court

Based on these factual findings, the magistrate judge concluded that UDEM did not successfully disaffiliate from the ILA

---

[7] Although the magistrate judge did not make findings regarding who conducted the investigation and who was on the hearing committee, we provide this information from the record to make clear that the hearing committee was made up of different people than the committee that investigated the charges against UDEM.

prior to imposition of the trusteeship because its disaffiliation vote was taken at a meeting that did not comply with the notice requirements in the ILA constitution, and that the trusteeship was imposed for lawful reasons, particularly to effectuate the merger between the locals. She therefore concluded that UDEM had failed to overcome the presumption of validity applied to trusteeships under the LMRDA. She recommended that the district court deny the motion for a preliminary injunction and, because the trusteeship was lawfully imposed and the lawsuit was not brought by the trustee, strike UDEM as a party to the case. Given that UDEM was the only plaintiff, she also recommended dismissal of the action.

In a short opinion addressing UDEM's objections to the magistrate judge's conclusions, the district court adopted the magistrate judge's report and recommendation in full and dismissed UDEM's claims without prejudice.[8] See Union de Empleados de Muelles de P.R., Inc. v. Int'l Longshoremen's Ass'n, 156 F. Supp. 3d 257 (D.P.R. 2016).[9]

---

[8] Because the district court adopted the magistrate judge's findings and conclusions in full, the discussion in the remainder of this opinion uses "district court" to refer to both the district court's order and the magistrate judge's report and recommendation.

[9] We have provided this short summary of the district court's legal conclusions as background for the discussion that follows. We defer describing the detailed legal conclusions of the court until it is necessary to our legal analysis.

- 13 -

**D.    Appeal**

UDEM appealed both the denial of its motion for a preliminary injunction and the dismissal of its claims, continuing to argue that (1) it had disaffiliated prior to the emergency trusteeship being imposed, (2) the trusteeship was imposed for an improper purpose, and (3) it should be allowed to proceed as plaintiff without authorization from the trustee.

In its response, the ILA argued that the appeal was now moot.  We directed the parties to file supplemental briefs on the issue of mootness, specifically, "whether [the ILA's] mootness argument applies only to the denial of the injunction as to the trusteeship or dismissal of the entire suit."  In its supplemental briefing, the ILA informed the court that the trusteeship ended on November 12, 2016, following the completion of the merger between the locals.  The ILA argued that, because the trusteeship had been terminated, both UDEM's appeal of the denial of the injunction and UDEM's appeal from the dismissal of the case were moot.  We turn to the issue of mootness first.

## II.

"Article III prohibits federal courts from deciding 'moot' cases or controversies -- that is, those in which the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  United States v. Reid, 369 F.3d 619, 624 (1st Cir. 2004) (quoting U.S. Parole Comm'n v.

- 14 -

Geraghty, 445 U.S. 388, 396 (1980) (internal quotation marks omitted)). Even after an appeal is filed, a case may become moot "if changed circumstances eliminate any possibility of effectual relief." Me. State Bldg. & Constr. Trades Council v. U.S. Dep't of Labor, 359 F.3d 14, 17 (1st Cir. 2004) (quoting Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 17 (1st Cir. 2003); see also Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (stating that "an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed" (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003))). Thus, if the termination of the trusteeship extinguished the controversy between UDEM and the ILA, we must dismiss the appeal in its entirety.

UDEM's appeal from the denial of its motion for a preliminary injunction is plainly moot. UDEM sought to enjoin the ILA "from the continuation of the emergency trusteeship." The trusteeship has already ended. The preliminary injunction sought by UDEM is therefore no longer needed. See Me. Sch. Admin. Dist. No. 35, 321 F.3d at 17 (stating that, ordinarily, where a suit seeks only injunctive relief, "once the act sought to be enjoined occurs, the suit must be dismissed as moot").[10]

---

[10] In addition to seeking to end the trusteeship, UDEM's motion for a preliminary injunction also sought to reinstate the officers who had been removed pursuant to the trusteeship. Although UDEM has not received this relief, it does not so much as mention the

- 15 -

The ILA goes a step further, however, and argues that the entire appeal is moot, citing cases from other circuits for the proposition that an entire case is moot when a trusteeship is terminated. This argument overlooks the crucial fact that many of those cases addressed only claims for injunctive relief. See Air Line Stewards & Stewardesses Ass'n, Local 550 v. Transp. Workers Union, 334 F.2d 805, 807-08 (7th Cir. 1964) (holding that appeal from an order enjoining a trusteeship became moot when the trusteeship was terminated); Vars v. Int'l Bhd. Of Boilermakers, 320 F.2d 576, 577 (2d Cir. 1963) (noting that claim seeking removal of a trusteeship "had become moot" due to termination of the trusteeship); Taylor v. Siemens VDO Autom. Corp., 157 F. App'x 557, 563 (4th Cir. 2005) (per curiam) (finding trusteeship claim moot where trusteeship had ended and "plaintiffs' counsel conceded at oral argument that the only relief the plaintiffs are seeking is injunctive relief"). Here, in addition to seeking injunctive relief, UDEM's complaint sought declaratory relief and damages. Thus, UDEM's appeal from the dismissal of the case is not moot if

---

claim for individual reinstatement on appeal and does not advance any arguments regarding the district court's denial of a preliminary injunction providing that relief. This omission is likely because UDEM cannot seek such relief on behalf of its officers under Title III of the LMRDA, as relief under that section is "limited to relief on behalf of the union." Gesink v. Grand Lodge, Int'l Ass'n of Machinists and Aerospace Workers, 831 F.2d 214, 216 (10th Cir. 1987) (stating that "nothing in the legislative history of Title III indicates an intent to protect the positions of union officers and employees").

UDEM "retain[s] sufficient interests and injury as to justify the award of declaratory relief" and damages sought in its complaint. Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974).[11]

To determine whether UDEM's claim for declaratory relief is moot, we examine whether "there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Am. Civil Liberties Union of Mass., 705 F.3d at 54 (alteration in original) (emphasis omitted) (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). UDEM's complaint sought a declaration that the trusteeship "is null and void, ab initio, without any legal effect." UDEM contends that such a declaration would resolve a real and immediate controversy because it would have the effect of creating an opportunity for UDEM to challenge the validity of actions taken by the trustee during the course of the trusteeship.

A declaratory judgment is often a means to an end rather than an end in and of itself, as its purpose is to determine the rights and obligations of the parties so that they can act in accordance with the law. See Ernst & Young v. Depositors Econ.

---

[11] In addition to declaratory relief and damages, UDEM sought a permanent injunction against the trusteeship and to stop the ILA from "interfering" in UDEM's affairs. For the reasons stated above with regard to the preliminary injunction, UDEM's request for a permanent injunction against the trusteeship is also moot. To the extent UDEM sought a permanent injunction against the ILA's actions more generally, it has not argued that such an injunction is still viable following the end of the trusteeship.

Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995) (stating that the Declaratory Judgment Act "is designed to enable litigants to clarify legal rights and obligations before acting upon them"). Because "[a] declaratory judgment is binding on the parties before the court and is res judicata in subsequent proceedings as to the matters declared," it can be used by a party to later obtain further relief. Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 122 n.11 (1st Cir. 1998) (quoting 10A Wright & Miller, Federal Practice and Procedure § 2771 (1983)). Indeed, the court issuing the declaratory judgment has the authority to grant "[f]urther necessary or proper relief" pursuant to the judgment, even if such relief was not requested in the complaint. 28 U.S.C. § 2202; see also Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 773 (1st Cir. 1994) (stating that § 2202 "authoriz[es] a district court to grant additional relief consistent with the underlying declaration even though the right to the relief may arise long after the court has entered its declaratory judgment").

If a declaratory judgment were issued by the district court in favor of UDEM here, the invalidity of the trusteeship would be established for the purposes of a subsequent challenge to the merger, and could even be used by UDEM in this action to seek further relief from the effects of the trusteeship. Such a challenge by UDEM is not merely hypothetical, as the declaratory judgment would provide UDEM with opportunities to challenge the

- 18 -

merger that would have been unavailable without it.  For example, on May 19, after the trusteeship had already been put in place but before the merger occurred, UDEM's membership took a second vote on disaffiliation that, assuming the vote followed the procedures set forth in the ILA constitution, would have been effective but for the trusteeship.  If the trusteeship were invalid, therefore, UDEM would have a colorable challenge to the validity of the merger based on the argument that, regardless of the procedural invalidity of its first disaffiliation vote, it took a valid vote to disaffiliate before the merger occurred.  Thus, the controversy over the validity of the trusteeship is sufficiently real and immediate to permit UDEM's appeal to go forward.  See Powell v. McCormack, 395 U.S. 486, 499 (1969) (holding that an action for a declaratory judgment was not moot because, after a declaratory judgment has been issued, it "can then be used as a predicate to further relief").[12]

---

[12] The precedent cited by the ILA in which declaratory judgment claims were deemed moot does not suggest a contrary conclusion. In those instances, unlike this case, the declaratory relief could not have been used prospectively by the local to bring an action to protect its rights as a union, and hence there was no ongoing controversy. See, e.g., Bowers v. Pipe Fitters Local Union, No. 4:09-cv-0878, 2010 WL 2303341, at *6 (S.D. Tex. June 7, 2010) (holding that challenge to the validity of the trusteeship was moot where "[t]he local union held elections, officers were installed, and the trusteeship dissolved"); Johnson v. Holway, No. Civ.A.03-2513 ESH, 2005 WL 3307296, at *11 (D.D.C. Dec. 6, 2004) (holding that case was moot where "[p]laintiffs seek the termination of the trusteeship and the return of Local R3-77 to local control, an outcome that has already been achieved").

Additionally, UDEM's appeal is not moot because it asserted a claim for damages in its complaint. See, e.g., Thompson v. Office & Prof'l Emps. Int'l Union, 74 F.3d 1492, 1504 (6th Cir. 1996) (stating that, if lifting a trusteeship mooted a claim for damages arising from the trusteeship, "national and international unions could impose trusteeships with impunity . . . and remain immune from legal scrutiny as long as they lifted the trusteeship before the plaintiff has his day in court"). The ILA contends that UDEM's claim for damages is moot because UDEM's complaint did not elaborate on its basis for seeking damages. That argument goes to the sufficiency of the complaint, however, not mootness. Moreover, courts have recognized a cause of action under Title III of the LMRDA for damages, for example, for costs incurred by the trustee on behalf of the local while the trusteeship was in place. See, e.g., Local Union 13410 v. United Mine Workers, 475 F.2d 906, 913 (D.C. Cir. 1973) (stating that "[t]he Local should also be permitted to recover whatever monetary damages it suffered due to the wrongful imposition of the trusteeship"). Regardless of whether UDEM ultimately would prevail in seeking damages, therefore, the claim for damages is a live controversy that would confront the district court if we were to reverse the dismissal of UDEM's claims.

Given these conclusions on mootness, we turn to the merits of the appeal from the district court's decision granting the ILA's motion to strike and dismissing the case.

**III.**

In determining whether the district court erred when it struck UDEM as a plaintiff and dismissed the case, we must first decide whether the trusteeship was lawfully imposed.  If UDEM was under a lawful trusteeship at the time it brought this lawsuit, we must then address whether UDEM nonetheless had standing to bring this suit without authorization from the trustee.

## A.   Disaffiliation

As a threshold matter, UDEM contends that it disaffiliated from the ILA before the ILA placed it in the emergency trusteeship and thus the ILA lacked authority to impose the trusteeship.   Under the LMRDA, the authority of an international to impose a trusteeship depends on whether a local is a "subordinate body" under that statute.  See 29 U.S.C. § 462 ("Trusteeships shall be established and administered by a labor organization over a subordinate body . . . ." (emphasis added)). If UDEM disaffiliated from the ILA prior to imposition of the trusteeship, it was no longer a "subordinate body" and the ILA had no authority to impose the trusteeship.  See, e.g., Int'l Bhd. of

Boilermakers v. Local Lodge D129, 910 F.2d 1056, 1060 (2d Cir. 1990).[13]

The dispute over whether UDEM disaffiliated from the ILA prior to the imposition of the emergency trusteeship on May 12 focuses on whether the vote taken at the May 9 meeting of UDEM's membership complied with the disaffiliation provisions of the ILA constitution. See Int'l Bhd. of Boilermakers v. Local Lodge 714, 845 F.2d 687, 692 (7th Cir. 1988) (looking to international's constitution to determine whether local had disaffiliated and therefore whether trusteeship could be imposed).

In reviewing the interpretation of the ILA constitution, we apply the principle that, "in the absence of bad faith, a labor organization's interpretation of internal union documents puts an end to judicial scrutiny so long as the interpretation is 'facially sufficient' or grounded in 'arguable authority.'"  Dow v. United

---

[13] In AFL-CIO Laundry & Dry Cleaning Int'l Union v. AFL-CIO Laundry, 70 F.3d 717 (1st Cir. 1995), we examined the validity of a trusteeship even though it was imposed after the local voted to disaffiliate. However, unlike the circumstances here, that case involved a dispute over the international's control of assets of the local that continued to exist following disaffiliation. See also Int'l Bhd. of Boilermakers v. Olympic Plating Indus., Inc., 870 F.2d 1085, 1088 (6th Cir. 1989) (explaining under similar circumstances that disaffiliation did not matter for jurisdictional purposes because "[e]ven if the appellees and the local no longer have any relationship to the International, the International should be authorized to recover its assets through the mechanics of a trusteeship"). In this case, the parties have not disputed that the ILA would not have authority to impose the trusteeship if UDEM disaffiliated before it was imposed.

Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993)(quoting Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters, 920 F.2d 1047, 1052 (1st Cir. 1990)) (footnote omitted); see also Local No. 48, 920 F.2d at 1052 ("[W]e align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions."). Thus, we will defer to the ILA's reading of its own constitution where it has offered a "facially sufficient" interpretation.

As relevant here, the ILA constitution provides that "no local shall withdraw or be dissolved so long as at least ten (10) members in good standing object to its dissolution at a meeting called to consider the question." UDEM contends that this provision does not apply to its May 9 disaffiliation vote because the provision does not use the word "disaffiliation." As the district court explained, however, the provision does contain the word "withdraw," which can reasonably be construed as a synonym for disaffiliate in circumstances where there is no other mechanism for "withdrawal" from the ILA. Although the second part of the clause mentions only dissolution, reading both clauses together suggests that "dissolution" is used as shorthand and that the requirement that a meeting be held and notice given applies to both dissolution and withdrawal. We therefore agree with the district court's conclusion that the ILA has plausibly read this

- 23 -

provision to dictate how a local's disaffiliation vote must be conducted.

With regard to the procedures required by the constitution to conduct a valid disaffiliation vote, the district court adopted the ILA's interpretation of the disaffiliation provision, holding that the provision's requirement that the meeting be "called to consider the question" mandated that "prior notice be given to the membership that a meeting will be held specifically for the purpose of considering disaffiliation."  We agree that the ILA's interpretation of this provision is plausible on its face and grounded in the language of the provision.  The fact that the vote must be taken "at a meeting called to consider the question," suggests both that the meeting must be announced to the membership in advance and that the purpose of the meeting -- to discuss disaffiliation -- must have been clear in that announcement.  As the district court noted, "only in this manner, after all, would dissenting members know to show up for the vote."[14]

_____

[14] Additionally, including in the constitution the requirement that the vote be taken only after the membership is given notice of the meeting and its purpose is consistent with the LMRDA's due process provisions, which protect, among other rights, the right of members to "attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." 29 U.S.C. § 411(a)(1); see also Local 450 v. Int'l Union of Electronic, Elec., Salaried, Mach. & Furniture Workers, 30 F. Supp. 2d 574, 583 (E.D.N.Y. 1998) (holding that a disaffiliation vote satisfied the due process provisions of the LMRDA where the union provided "actual notice of the disaffiliation meeting to the entire membership of Local 450 by mail, by hand and by phone," and the

- 24 -

In sum, the ILA's interpretation of the constitutional provision at issue here easily meets the deferential standard applied to a union's interpretation of internal union documents.

Turning to the question of whether UDEM complied with the requirements of the ILA constitution, we review the district court's factual findings for clear error. See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 115 (1st Cir. 2014). UDEM does not dispute the district court's finding that "Mercado did not inform the membership before the May 9 meeting that disaffiliation would be considered at that meeting." Union de Empleados, 156 F. Supp. 3d at 270. Given UDEM's failure to produce any evidence that the membership was notified of the purpose of the meeting, that finding was not clearly erroneous. Thus, the district court was fully justified in concluding that the disaffiliation vote taken did not comply with the restrictions on disaffiliation in the ILA constitution,[15] and the ILA had authority

notice "promised a 'full discussion' of the disaffiliation issue and a 'membership vote'"). Indeed, any provision of the ILA's constitution that was inconsistent with the protection of the rights provided in the LMRDA bill of rights would be unenforceable. 29 U.S.C. § 411(b).

[15] We also agree with the district court that there are serious questions regarding the validity of the vote itself. The less-than-clear motion presented to the membership frames the question not as a standalone vote to disaffiliate, but as an authorization or ratification for many actions by the executive board, one of which was disaffiliation. It thus may have been unclear to members whether they were voting to disaffiliate. And the actions taken by Mercado and UDEM following the vote, such as voting to reject the merger and notifying the ILA that UDEM had rejected the merger

- 25 -

to impose a trusteeship on UDEM as a "subordinate body" so long as it complied with the trusteeship provisions of the LMRDA.

## B.    Validity of the Trusteeship

Under the LMRDA, "a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing . . . shall be presumed valid for a period of eighteen months from the date of its establishment."  29 U.S.C. § 464(c). UDEM asserts that this presumption does not apply because imposition of the trusteeship did not meet the procedural requirements of the ILA constitution and the hearing held by the ILA was not fair.  The ILA constitution prescribes a multi-step process whereby an investigation is conducted by ILA officials, an emergency trusteeship is imposed, charges are brought against the union and/or officers of the union, a hearing is held before a committee of the ILA to resolve the charges, and a decision is rendered by the hearing committee whether to continue the trusteeship.

That process was followed here.  The ILA conducted an investigation, initially imposed an emergency trusteeship, and then conducted a further investigation, which resulted in charges

---

but not that it had disaffiliated, suggest that even those involved in the vote did not believe it had the effect of disaffiliating UDEM from the ILA.

against UDEM and Mercado. The ILA then held a hearing to resolve those charges, which resulted in the continuation of the emergency trusteeship. UDEM asserts that the hearing it received was not fair because Mercado left the hearing without having an opportunity to participate. However, there is no requirement in the ILA constitution that the president of the union participate at the hearing, and, in any event, Mercado refused to represent the interests of the local that had been placed in trusteeship, instead purporting to represent a disaffiliated entity. Thus, the trusteeship is presumptively valid, and UDEM must show by "clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under [the LMRDA]." Id. § 464(c).

UDEM has not met this high burden. Pursuant to section 302 of the LMRDA, an international may impose a trusteeship over a local

> only in accordance with the constitution and
> bylaws of [the international] and for the
> purpose of correcting corruption or financial
> malpractice, assuring the performance of
> collective bargaining agreements or other
> duties of a bargaining representative,
> restoring democratic procedures, or otherwise
> carrying out the legitimate objects of such
> labor organization.

Id. § 462. The ILA constitution contains substantively identical language regarding when a trusteeship may be imposed. The ILA contends that its primary purpose in imposing the trusteeship was

to effectuate the merger of the locals.  In addition, it points to "UDEM's refusal to honor its obligation under the work sharing agreement," "correcting Mercado's financial malpractice," and "assuring the successful negotiation of collective bargaining agreements with UDEM's employers" as additional reasons for imposing the trusteeship.  It argues that each one of these purposes, standing alone, is sufficient to warrant imposition of a trusteeship.

The district court credited the ILA's claim that the primary purpose for the trusteeship was to "neutralize local 1901's resistance to the proposed merger."  Union de Empleados, 156 F. Supp. 3d at 271.  That finding was not clearly erroneous.[16]  The ILA made its intention to merge the unions known prior to imposing the trusteeship, attempted to convince the members of UDEM to accept the merger, and then imposed the trusteeship the day after UDEM informed the ILA in writing that its members had unanimously rejected the merger.  In sum, the ILA threatened to impose a trusteeship if UDEM continued to oppose the merger.  When UDEM did oppose the merger, the ILA followed through on its threat.

Moreover, we agree with the district court's conclusion that effectuating the merger was a proper purpose for imposing the

---

[16] We review for clear error the district court's factual findings in support of its conclusion that UDEM did not muster sufficient proof to rebut the presumption of validity. See AFL-CIO Laundry, 70 F.3d at 719.

trusteeship under the LMRDA. The ILA's constitution gives the ILA "authority to merge or consolidate two or more locals on such terms and conditions as it deems necessary or appropriate when such action is deemed to be in the best interest of the International and its members." Prior to imposing the trusteeship, the ILA thoroughly documented the likely benefits to its members from the merger, including increased bargaining power and unity during collective bargaining with employers, uniformity in benefits that could lead to financial savings, and more effectively promoting cargo growth for San Juan. As these benefits relate to improving the performance of core union functions, realizing them is a "legitimate object[]" of the ILA. 29 U.S.C. § 462; see also Serv. Emps. Int'l Union, Local 87 v. Serv. Emps. Int'l Union, Local No. 1877, 230 F. Supp. 2d 1099, 1105 (N.D. Cal. 2002) ("Imposing a trusteeship to effectuate a planned merger is valid under the LMRDA.").

UDEM nonetheless contends that the trusteeship was unlawful because it was motivated by additional improper reasons, chiefly, preventing UDEM's disaffiliation and unlawfully circumventing the grievance and arbitration procedure in the work-sharing agreement between the locals in an effort to punish UDEM for failing to comply with the agreement. UDEM argues that if the ILA was concerned with UDEM's failure to comply with the work-

sharing agreement, its only recourse was to file a grievance, not impose a trusteeship.[17]

Contrary to UDEM's contention, the ILA was not required to initiate a grievance under the work-sharing agreement if it believed that UDEM was not following the agreement. As the district court explained, the ILA was not a party to the agreement and therefore was not bound by its provisions. See Union de Empleados, 156 F. Supp. 3d at 261. The ILA's actions were governed only by the LMRDA and its constitution. Under the LMRDA, ensuring compliance with the agreement was a lawful reason to impose a trusteeship because the ILA had a strong interest in ensuring harmony among the locals in San Juan and preserving collective bargaining agreements between the locals and employers.

_____

[17] Implicit in UDEM's argument is the proposition that a trusteeship is invalid if the motivations of the international include any improper purpose. UDEM has not cited any case law to that effect, but other courts have held that a trusteeship is valid so long as it is imposed for at least one proper purpose, see Nat'l Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 923 (2d Cir. 1971), even if it was also motivated by an improper purpose, see, e.g., Keenan v. Int'l Ass'n of Machinists, 632 F. Supp. 2d 63, 69 (D. Me. 2009); Morris v. Hoffa, No. Civ. A. 99-5749, 2001 WL 1231741, at *7 (E.D. Pa. Oct. 12, 2001). We need not decide whether to adopt the holdings of those cases, however, because none of the purposes for which the trusteeship at issue here was imposed is unlawful under the LMRDA. In addition to the reasons for the trusteeship that we discuss in detail above, the district court found that there were other valid reasons for imposing the trusteeship, including UDEM's attempt to undermine collective bargaining agreements with employers and Mercado's engaging in financial misconduct in an effort to shelter UDEM's assets from trusteeship.

UDEM's contention that the trusteeship was imposed for the purpose of preventing disaffiliation fares no better. Although "courts have widely recognized that preventing disaffiliation is not a proper purpose under § 462 for the imposition of a trustee," AFL-CIO Laundry, 70 F.3d at 719, the district court here found that "at the time the ILA imposed the trusteeship, it had no knowledge of UDEM's intent to [disaffiliate] or attempt at disaffiliation," 156 F. Supp. 3d at 271. That determination is supported by the district court's finding that the fax informing the ILA of disaffiliation was sent only after Mercado received the letter stating that UDEM had been placed in an emergency trusteeship. Although Mercado asserted that he had told ILA officials of UDEM's disaffiliation sooner, the district court found that evidence not to be credible. The speculation in UDEM's brief that UDEM members present at the meeting where the disaffiliation vote was taken would have told ILA officials that UDEM had voted to disaffiliate is insufficient to overturn these reasoned credibility determinations by the district court.

UDEM has therefore failed to overcome the presumption of validity in 29 U.S.C. § 464(c), and we affirm the holding of the district court that the trusteeship was valid.

## C. Motion to Strike UDEM as a Party

Under the ILA constitution, the only entity with authority to bring suit on behalf of UDEM was the trustee, and the

trustee did not authorize this suit. The ILA constitution provides that the powers of the trustee are set forth at the time of his appointment. As relevant here, the trustee was given the power to "take control of all . . . affairs of Local 1901." Thus, only the trustee, not Mercado or any other former officials, had the power to authorize a suit on behalf of UDEM. See Cty., Mun. Emps.' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union, 365 F.3d 576, 580 (7th Cir. 2004)(holding that lawyers acting without authorization from the trustee could not act as representatives of the local in lawsuit against international).

Nor does UDEM have standing to bring this suit as its own entity, rather than as an affiliate of the ILA, as UDEM suggests. As explained above, the LMRDA limits suits challenging a trusteeship under Title III to those by a member or "subordinate body." 29 U.S.C. § 464(a). If UDEM is bringing this case as an organization not affiliated with the ILA, then, as the district court correctly held, it is neither a subordinate body nor a member of the ILA and cannot sue under the LMRDA. See Union de Empleados, 156 F. Supp. 3d at 273.

UDEM contends that holding that a union in a trusteeship cannot sue to challenge that trusteeship without permission from the trustee would leave local unions that are placed in a trusteeship without a mechanism for challenging the trusteeship's legality. The travel of this case undermines UDEM's argument.

UDEM was able to file a lawsuit challenging the trusteeship and to obtain a ruling on the merits of the validity of the trusteeship. That is because the question of whether the local is the proper party to file the lawsuit challenging the trusteeship necessarily turns on the validity of the trusteeship. If we had held that the trusteeship here was unlawful, UDEM would not have needed permission from the trustee to bring this suit, and it would be a proper plaintiff to obtain relief. Only where a court first finds that a trusteeship was lawfully imposed will a union be unable to continue to challenge the legality of the trusteeship without the trustee's permission. At that point, such a challenge would be futile.

Furthermore, individual members of the union who wish to challenge a trusteeship imposed for purposes that violate their individual rights have a cause of action under Title I of the LMRDA. See 29 U.S.C. § 412. If Mercado believed, for example, that the trusteeship was imposed for the purpose of removing him from the union as retaliation for his opposition to the work-sharing agreement and the merger, he could have brought a lawsuit under Title I. See id. § 411(a)(2) (giving labor union members the right "to express any views, arguments, or opinions" without retaliation from the union); Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 358 (1989) (holding that removal of an elected union official by a trustee because the official opposed a proposed

- 33 -

dues increase was a violation of Title I of the LMRDA). Such a lawsuit would likely involve consideration by the court of the purposes for which the trusteeship was imposed. Thus, rather than leaving unions and their members without recourse when an illegal trusteeship is imposed, the statutory scheme provides multiple avenues through which a trusteeship may be challenged.

## IV.

In summary, for the reasons set forth herein, we dismiss as moot that portion of UDEM's appeal challenging the denial of its motion for a preliminary injunction. We affirm that portion of the district court order striking UDEM as a plaintiff and dismissing the case without prejudice.

So ordered.

## Chronology of Events

| | |
|---|---|
| January 2015 | Horizon Lines closes operations in San Juan, leading to dispute about which local unions could bargain with its successor. |
| End of March 2015 | Locals, including UDEM, consent to a work-sharing agreement. |
| April 14, 2015 | ILA officials inform Mercado that the ILA plans to merge the locals. |
| April 23, 2015 | UDEM's executive board meets and allegedly votes in favor of disaffiliating from the ILA. |
| May 8, 2015 | ILA informs UDEM's membership that a meeting will be held on May 11 to discuss the merger. |
| May 9, 2015 | Mercado calls an emergency meeting of UDEM's membership, and members present at the meeting vote to "accept" the board's decision to disaffiliate from the ILA and to reject the merger. |
| May 11, 2015 | ILA meeting regarding the merger is held and Mercado sends ILA a letter stating that UDEM's membership has voted to reject the merger. |
| May 12, 2015 | ILA sends a letter to UDEM imposing an emergency trusteeship.<br><br>Mercado sends the ILA a letter stating that UDEM had voted on May 9 to disaffiliate. |
| May 19, 2015 | UDEM holds another membership meeting where members again vote to disaffiliate from the ILA. |
| May 26, 2015 | ILA officer James Paylor files written charges against UDEM with the ILA and requests that the trusteeship be continued. |
| June 1, 2015 | Paylor amends the charges to allege additional misconduct by Mercado and UDEM. |
| June 3, 2015 | UDEM files this lawsuit. |
| June 11, 2015 | The ILA holds a hearing on the charges against UDEM and the charges are sustained.  The trusteeship is continued. |
| November 12, 2016 | UDEM merges with local 1740, and the trusteeship is terminated. |