# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 04-1654 & 04-8006

COUNTY, MUNICIPAL EMPLOYEES' SUPERVISORS' AND
FOREMEN'S UNION LOCAL 1001 (CHICAGO, ILLINOIS),

*Plaintiff-Appellant*,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,

*Defendant-Appellee.*

_____

Appeal (and request for permission to appeal)
from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 1677—**Robert W. Gettleman**, *Judge*.

_____

SUBMITTED APRIL 5, 2004—DECIDED APRIL 22, 2004

_____


Before POSNER, EASTERBROOK, and ROVNER, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*. The Laborers'
International Union sought to put its Local 1001 into
trusteeship. Authority to approve trusteeships is vested
in an independent hearing officer as a result of a consent
decree settling a racketeering suit by the United States. See
*Serpico v. Laborers' International Union*, 97 F.3d 995 (7th
Cir. 1996). Concluding that the Local's leadership had been
infiltrated by organized crime, was engaged in financial

mischief, and had undermined the Local's democratic processes, the independent hearing officer imposed a trusteeship. After the Trustee assumed control, the law firms that had previously represented the Local filed a suit—in the name of the Local rather than of the ousted officers— in state court. The Trustee promptly fired the law firms (Winston & Strawn LLP and Faraci & Faraci) and directed them to take no further action in the Local's name; meanwhile the International removed the suit to federal court on the ground that disputes about trusteeships arise under §302 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §462.

Still purporting to act for the Local, the law firms filed two motions: first for a remand on the ground that Local 1001 represents only municipal employees and hence is outside the scope of the LMRDA even though the International is a "labor organization" covered by that statute; and second (in the event the first should be denied) for a temporary restraining order that would block the Trustee from exercising any authority over the Local. The district judge denied both motions but certified his decision on the first for interlocutory appeal under 28 U.S.C. §1292(b). The judge stated that the subject ordinarily would not meet the criteria of that statute but that, as the law firms are entitled to appeal from the order denying their request for a TRO, this court should have the whole dispute before it. The law firms then filed a petition for leave to appeal under §1292(b) plus an appeal from the denial of the request for a TRO. They concede in this court that denial of a TRO is not appealable—as indeed it is not, for a TRO is not an "interlocutory injunction" within the meaning of 28 U.S.C. §1292(a)(1). See *Sampson v. Murray*, 415 U.S. 61, 86 & n.58 (1974). Instead they argue that the district court's order is appealable because it has the "effect" of denying an interlocutory injunction. See *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988); *Carson v.*

*American Brands, Inc.*, 450 U.S. 79 (1981). But the only reason it might have such an effect would be their own strategy; rather than asking for a preliminary injunction, the law firms immediately appealed. That maneuver cannot be allowed to work. Jumping the gun does not turn an otherwise non-final action into an appealable order. Only when resort to the regular processes of litigation is unavailing, and the judge is unwilling to make a prompt decision even though delay erodes or obliterates the rights in question, does inaction have the "effect" of denying injunctive relief. This district judge has not shown any disposition to dawdle. Thus the premise underlying the district court's use of §1292(b) is false. We could deny the petition for leave to appeal on that ground alone, but there is a more fundamental problem: the two law firms have no business purporting to speak on behalf of Local 1001. Both the notice of appeal (No. 04-1654) and the petition for leave to appeal (No. 04-8006) have been filed against express instructions of the litigant purportedly represented.

Article IX §7 of the International's constitution provides that a trustee takes full control of a local and exercises all powers that the local's directors and officers could exercise. This entitles the Trustee to fire the law firms whether or not the LMRDA applies (and, if it does, its provisions give a trustee the same powers; see 29 U.S.C. §464(c)). A trustee's powers vest immediately on appointment; judicial approbation is unnecessary. See, e.g., *Letter Carriers v. Sombrotto*, 449 F.2d 915, 921 (2d Cir. 1971) (Friendly, J.). The law firms insist that this would enable the International to prevail even if it acts improperly, for a trustee will block any challenge to his own authority. Yet no trustee can prevent the ousted officers from suing in their *own* names (as in *Serpico*) and asking the court to restore them to office. The problem here is that the law firms purport to represent Local 1001 alone. All litigation must occur in the name of the real party in interest, see Fed. R.

Civ. P. 17(a), so the judge was obliged to treat this suit as exactly what it purports to be: a claim by the Local rather than by a natural person. Yet these law firms are no longer authorized to speak for the Local.

Responding to the Trustee's motion to dismiss the appeals, the law firms assert that they have a fiduciary duty to the Local and its members that supersedes any instructions from the Trustee. This breathtaking claim depicts lawyers as ombudsmen authorized to pursue whatever legal remedies they think a client *should* favor, whether the client agrees or not. It is hard to take seriously. Suppose the board of directors at Alpha Corp. instructs counsel to commence a suit charging Beta Inc. with patent infringement. After a proxy contest in which one issue is the prudence of spending corporate funds on this suit, the directors are thrown out of office, and their replacements direct counsel to dismiss the suit. According to the view advanced by our two law firms, the lawyers could refuse to follow that direction and continue the litigation (presumably at corporate expense) after declaring that they have a "fiduciary duty to the investors" to prosecute any litigation they deem meritorious. Twaddle! The fiduciary duty rests on the directors in our hypothetical, and on the Trustee in the actual events. Counsel's responsibility is to give good advice and, if unsuccessful in persuasion, to implement the client's decisions, not to thwart or override them.

These law firms have no responsibility at all, fiduciary or otherwise, for they have been sacked. Clients may dismiss their attorneys for any reason, good or bad, and a fired lawyer has no entitlement—certainly no "fiduciary duty"—to continue acting on the ex-client's behalf. See generally American Law Institute, *Restatement of the Law Governing Lawyers* §§ 43, 44 (2000) (collecting authority). Even if the discharge violates a contract, so that the lawyer is entitled to damages, the client's authority to control the litigation remains absolute; an attorney must withdraw

from the representation as soon as the client so instructs. What is more, lawyers are obliged not to oppose or otherwise undermine their ex-client's legal position, and they must not reveal confidences they may have received during the course of the representation. See *Restatement* §45(2). These two law firms, by purporting to act on behalf of a client that has discharged them, and by opposing in court the position their ex-client has taken on a matter within the scope of the representation, may well have violated several disciplinary rules.

One can imagine situations in which someone other than a corporation's board (or a union's officers) would have authority to speak for the entity, and then an order by the board or officers firing counsel could be ineffectual. We have in mind situations of the kind that support derivative litigation in corporate law, where a court allows investors to bypass the board and speak for the corporation. Cf. *In re Fraser*, 83 Wn. 2d 884, 523 P.2d 921 (1974), overruled on other grounds by *In re Boelter*, 139 Wn. 2d 81, 985 P.2d 328 (1999). To the extent this analogy has any force, however, it is the International and the Trustee who stand in for the elected officers, and as the Trustee wants counsel gone they are obliged to go gracefully. The law firms have not sued on behalf of any officer or member of the Local under a theory that would permit a member to act derivatively on behalf of the Local; instead they have flouted the Trustee's orders and purported to act as the Local's lawyers without attempting the sort of demonstration that might justify derivative litigation. Their approach, if countenanced, would permit self-help by the ousted officers to thwart implementation of the LMRDA, the International's constitution, and the process established by the consent decree.

We dismiss these appeals as unauthorized by the litigant and refer this matter to the Attorney Registration and Disciplinary Commission of Illinois. Local 1001, through counsel engaged by the Trustee, has moved to dismiss the

complaint and end the litigation; the district judge should grant that motion promptly.

**A true Copy:**

     **Teste:**

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
