IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| The LAW OFFICE of JAMES P. GRIFO, LLC a Washington State Limited Liability Company; and THE LAW OFFICE of NICHOLAS POWER, PLLC, a Washington State Professional Limited Liability Company,<br><br>                         Plaintiffs,<br>         v.<br><br>AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, a labor union; WALTER BLAIR, as purported administrator of Local 114; and LOCAL 114, a labor union operating in the State of Washington,<br><br>                         Appellants,<br><br>COLIN MAYCOCK as a member of Local 1849, President of Local 1849, and as a member of American Federation of State, County & Municipal Employees; JAEL KOMAC, a member of Local 114, as former President of Local 114, and a member of American Federation of State & Municipal Employees; and LOCAL 1849, a labor union operating in the State of Washington,<br><br>                         Respondents. | No. 82504-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, A.C.J. — Two local unions sued their parent union to enforce

provisions of the union constitution. After the case was dismissed, the parent

union placed one of the locals under an emergency administratorship and dismissed the local's officers. The appointed administrator then requested the local's legal file and an accounting from the locals' attorneys. The attorneys filed an interpleader action to determine ownership of the file. The superior court concluded that the administrator was not entitled to the legal file or an accounting.

Because an organization is entitled to its legal file and an accounting from its former lawyer, regardless of who controls the organization, we reverse. But because the president of the other local may not have understood that the file might be given to the parent union that he was suing when he consented to disclosure of the file, we conclude that the trial court should perform an *in camera* review of the file and accounting and determine whether the attorneys' other client has a superseding confidentiality interest over the administrator's interest in any portions of the file.

## FACTS

The American Federation of State, County & Municipal Employees (AFSCME) is an international union and a federation of local and intermediate labor organizations. The Washington State Council of County and City Employees, Council 2 is the Washington State affiliate of AFSCME. Local 114 and Local 1849 are local union chapters representing the municipal employees of the city of Bellingham and the employees of San Juan County respectively. Both locals are affiliates of Council 2 and AFSCME.

2

In 2019, Jael Komac was the president of Local 114 and Colin Maycock was the president of Local 1849.  In February 2019, Maycock and Komac hired the Law Office of James P. Grifo LLC and the Law Office of Nicholas Power PLLC ("the law firms") to sue AFSCME and Council 2.  The law firms executed an attorney-client fee agreement.  Maycock signed the agreement in his individual capacity, but Komac signed the agreement on behalf of Local 114.[1] The agreement provided,

> CONCURRENT REPRESENTATION.  Clients have discussed with Attorneys that a possibility of concurrent representation of both parties constitutes a potential conflict of interest.  In Attorneys' opinion, no actual conflict exists at this time.  This is because all parties currently share a commonality of interest in the matters. . . . In undertaking the concurrent representation of each of you, Attorneys cannot and will not advise either of you as to any matters upon which an actual conflict of interest develops among you.  In the event that any conflict, dispute or disagreement arises between you as to your respective rights and defenses, we shall decline to represent you in any manner in connection with those disputes or disagreements.

The agreement stated, "Please also be aware that as among you there is no right to assert attorney/client privilege as to communications Attorneys receive from Clients in connection with Attorneys' joint representation of Clients."  And it included an explicit conflict waiver provision:

---

[1] Komac asserts that she was also an individual client of the law firms, noting that while only Maycock and Local 114 were listed on the fee agreement, Maycock, Komac, Local 114, and Local 1849 were all individually named parties in the complaint filed by the law firms.  The trial court determined that Komac raised a legitimate factual dispute as to this issue, but that because Komac's and Maycock's interests were aligned, the issue was not material to its resolution of the case.

WAIVER OF POTENTIAL AND/OR ACTUAL CONFLICT OF INTEREST

I, Colin Maycock, hereby acknowledge that I have carefully read the foregoing, informing me that my interests may be potentially in conflict with those of Local 114 in connection with Attorneys' representation of my interests in connection with the disclosure issue. I expressly acknowledge that the concurrent representation by Attorneys of my interests and those of Local 114 constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Local 114 are potentially adverse. I nevertheless knowingly and voluntarily consent to such concurrent representation by Attorneys.

In April 2019, the law firms sued AFSCME and Council 2 in federal court on behalf of Maycock, Komac, Local 114, and Local 1849 under the labor management relations act (LMRA)[2] and the labor management reporting and disclosure act (LMRDA).[3] The lawsuit sought declaratory and equitable relief establishing the plaintiffs' right to information about Council 2 wages and finances under the AFSCME constitution. On October 1, 2019, the federal court dismissed the lawsuit without prejudice on the grounds that AFSCME and Council 2 had given the locals access to the requested documents.[4] The law firms' representation ended when the federal court dismissed the case.

On October 11, 2019, Komac resigned as president of Local 114. She sent an email to the local, asserting that Council 2 was failing to effectively represent the local. She invited the members to take action, saying "our dues money is being misused and I can no longer stand by and do nothing about it.

---

[2] 29 U.S.C. chapter 7.

[3] 29 U.S.C. chapter 11.

[4] The plaintiffs disputed that this access was actually given.

There is something better for all of us out there and I am going to actively pursue it, starting this moment. Please join me."

The AFSCME constitution binds all its chartered local unions. It states, "All subordinate bodies shall at all times be subject to the provisions of the [AFSCME] International Constitution." Local 114's constitution similarly provides, "This local union shall at all times be subject to the provisions of the [AFSCME] constitution." The AFSCME constitution allows AFSCME to place a local union under an administratorship, a process wherein AFSCME's president takes control of the local's affairs and business. The president can place the local under an administratorship if they find that an emergency situation exists on the grounds:

> (1) that a subordinate body has seceded or purported to secede, or (2) that dissolution or secession of a subordinate body is threatened, or (3) that dissipation or loss of the funds or assets of a subordinate body is threatened, or (4) that the subordinate body has deliberately filed false per capita tax or other financial or audit reports with the International Union, or (5) that a subordinate body interferes publicly with the organizing campaign of another subordinate body, or (6) that a subordinate body is acting in violation of this Constitution or of any lawful order of the Convention, the International Executive Board, or the International President.

The president may take this action unilaterally, but it must be followed by prompt notice and a hearing before AFSCME judicial officers, which have the power to vacate the administratorship if it finds that the local has not committed any of the listed acts. If the president appoints an administrator, the administrator may "take possession of all the funds, properties, books and other assets" of the local

and "shall institute all necessary action to recover money or other property of the subordinate body."

On October 16, 2019, AFSCME's president found three bases for placing Local 114 under an administratorship and appointed AFSCME employees Walter Blair and Jeremy Kruse as administrator and deputy administrator, respectively. The existing officers of Local 114 were removed from their positions. On November 5, a member of AFSCME's Judicial Panel held an evidentiary hearing on the imposition of the administratorship. Following the hearing, the hearing officer issued a written decision upholding the administratorship.[5]

As part of his administrator duties, Kruse began reviewing Local 114's bank statements and finances. He saw payments made to the law firms but did not find invoices, other billing records, or the client file from that representation. In November 2019, Kruse sent a letter to the law firms on behalf of Local 114, requesting the client file, records of correspondence, representation agreements, copies of bills, and an accounting for money paid for services.

On November 20, 2019, the law firms initiated an interpleader action in superior court against AFSCME, Blair, Maycock, Komac, Local 1849, and Local 114 to determine ownership of Local 114's client file and the law firms' responsibilities under the Rules of Professional Conduct (RPCs).[6] Local 114,

---

[5] The AFSCME constitution allows members of a local union placed under an administratorship to appeal to AFSCME's Executive Board. Members of Local 114 did so. This is discussed further below.

[6] The law firms also sought declaratory relief to determine who was responsible for additional payments, but voluntarily dismissed that claim.

AFSCME, and Blair filed a joint answer, which included a counterclaim demanding an accounting from the law firms. In March 2020, Local 114, AFSCME, and Blair moved for summary judgment, asserting that Local 114 was entitled to its client file and an accounting as a matter of law.

In May 2020, following an election, Local 114 members changed their union affiliation from AFSCME and Council 2 to the Guild of Pacific Northwest Employees. The parties disputed whether Local 114 continued to exist after this representation change.

In September 2020, the trial court denied the motion for summary judgment. The court concluded that as an organizational entity, Local 114's client relationship with the law firms would generally not be affected by a change in control. But it noted that Maycock (and possibly Komac) were co-clients of the law firms, and Local 114 was now controlled by the adverse party in the litigation. It concluded that because Maycock could not have waived such a conflict of interest under RPC 1.7, that waiver also was not possible after the conclusion of the litigation, and that the law firms were therefore required to continue to protect the confidentiality of the file on Maycock's behalf.

In December 2020, Local 114, AFSCME, and Blair moved for production of non-privileged financial billing and payment records. The court denied the motion, concluding that the movants had failed to establish a duty on the part of the law firms to produce such documents. Local 114, AFSCME, and Blair moved for summary judgment dismissal, and the court granted the motion.

7

AFSCME, Local 114, and Blair appealed. The law firms did not respond, but Maycock and Komac did.

ANALYSIS

The appellants contend that the trial court erred by denying their first motion for summary judgment and entering a judgment against them. Maycock and Komac disagree. We conclude that Local 114 has a general right to its client file and an accounting, but that this right may be superseded by Maycock's—and possibly Komac's and Local 1849's—confidentiality interest with respect to certain documents or information. Exactly which documents, and whether those documents should simply not be turned over or should instead be redacted, should be determined by the trial court on remand.

"Summary judgment is appropriate where there are no disputed material facts, and the moving party is entitled to judgment as a matter of law." Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Appellate courts review a summary judgment order by engaging in the "same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party." Christensen, 152 Wn.2d at 305. " '[T]he legal effect of a contract is a question of law that we review de novo.' " Rosen v. Ascentry Techs., Inc., 143 Wn. App. 364, 369, 177 P.3d 765 (2008) (quoting Keystone Masonry v. Garco Constr., 135 Wn. App. 927, 932, 147 P.3d 610 (2006)). "When interpreting the meaning of any RPC, . . . . [o]ur goal is to give effect to the intent behind the rule, which we discern, where possible, from the

plain language of the rule at issue in the context of the RPCs as a whole." LK

Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 48, 75, 331 P.3d 1147 (2014)

(citation omitted).

Client File

The appellants say that, as a former organizational client of the law firms,

Local 114 is entitled to its client file under the RPCs. We conclude that while

Local 114 does have a right as a former client to receive its client file, Maycock

and any other joint clients of the law firms may not have given informed consent

to waive their confidentiality right under these facts, a consideration that may

supersede Local 114's right of access.

1. Rights of a Former Client

RPC 1.9 discusses a lawyer's obligations to a former client. Under the

rule,

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client *except as these Rules would permit or require* with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation *except as these Rules would permit or require* with respect to a client.

(Emphasis added.) RPC 1.16(d) provides that, "Upon termination of

representation, a lawyer shall . . . surrender[] papers and property to which the

client is entitled." A Washington State Bar Association (WSBA) Ethics Advisory

Opinion interpreting RPC 1.16 states, "At the conclusion of a representation,

unless there is an express agreement to the contrary, the file generated in the

9

course of representation, with limited exceptions, *must be turned over to the client at the client's request*." Wash. State Bar Ass'n Rules of Prof'l Conduct Comm., Advisory Opinion 181 (rev. 2009) (emphasis added) https://ao.wsba.org/print.aspx?ID=1524. Taken together, the rules establish that a lawyer has a duty not to use or reveal information relating to representation of a former client, except, among other reasons, to return a client's property upon termination of representation.

But this duty is not absolute. A lawyer may withhold certain papers if doing so will not prejudice the client, such as drafts, duplicates, or personal notes. Id.; see also State v. Chargualaf, No. 44712-6-II, slip op. at 3 (Wash. Ct. App. Aug. 12, 2014) (unpublished) (concluding that criminal client was entitled to his client file from his trial attorney but that attorney should withhold sensitive or confidential information to the extent that such withholding would not prejudice client), https://www.courts.wa.gov/opinions/pdf/D2%2044712-6-II%20%20Unpublished%20Opinion.pdf.[7] Furthermore, a "protective order or confidentiality obligation that limits the distribution of documents or specifies the manner of their disposition may supersede a conflicting demand of a former client." Advisory Op. 181. Thus, lawyers have a general obligation to return a client file to a former client upon their request, but are not required to do so to the extent that the former client will not be prejudiced or a confidentiality obligation supersedes the former client's demand.

---

[7] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

2. Considerations for Organizational Clients

In this case, the law firms represented Local 114 as an organizational client. "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." RPC 1.13(a). The organization itself is the client, not its constituents. See Comment 10 to RPC 1.13 (explaining that in a conflict between an organizational client and one of its constituents, the lawyer's duty is to the organization, and discussions between the lawyer and the constituent may not be privileged). When control over an organization changes, the organization's lawyer must answer to the new officers, not the former officers. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985) ("New managers . . . may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers.").[8]

---

[8] At oral argument, counsel for Komac and Maycock relied on the portion of Weintraub that specifies that officers of a corporation "must exercise the [attorney-client] privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." 471 U.S. at 349 (citing Dodge v. Ford Motor Co., 204 Mich. 459, 507, 170 N.W. 668 (1919)). While this principle is sound, neither this language nor the cited case serves to prevent an officer from accessing the organization's legal information in the first place. Counsel pointed to Kruse's explanation that he was seeking the client file "[i]n order to fulfill [his] duties as Local 114's Deputy Administrator, and to ensure that the obligations required of attorneys under Washington's Rules for Professional Conduct" as an indication that Kruse was seeking the information for an improper purpose, since the AFSCME constitution does not list ensuring the professional responsibility of attorneys as a responsibility of administrators. But Kruse also specified that Local 114 was not consenting to any representation adverse to Local 114's interests and asked the attorneys to comply with RPC 1.9 to that effect, indicating his comment about ensuring the attorneys complied with their ethical obligations was related to preserving the "rights and interests of the

11

This general rule extends to unions and administratorships. County, Municipal Employees' Supervisors' and Foremen's Union Local 1001 v. Laborers' International Union of North America, 365 F.3d 576, 579 (7th Cir. 2004) is instructive. There, an international union placed a local under a trusteeship and put a trustee in charge of the local's affairs.[9] Local 1001 at 577. After the trustee took control, law firms who had been representing the local sued on its behalf. Id. The trustee fired the law firms and directed them to take no further action in the local's name. Id. The law firms ignored the directive and filed motions in the lawsuit on behalf of the local union. Id. at 578. The Seventh Circuit held that the trustee's powers vested upon appointment and that the trustee had the authority to fire the law firms. Id. at 579. ("[I]t is the International and the Trustee who stand in for the elected officers, and as the Trustee wants counsel gone they are obliged to go gracefully.").

Here, Local 114's administrators generally have the same rights with respect to the law firms as any former client.[10] As mentioned above, a lawyer

---

members" of the Local and AFSCME, one of the administrators' duties under the AFSCME constitution.

[9] The difference between "trusteeships" and "administratorships" is "purely semantic." Troman v. Am. Fed'n of State, County & Mun. Employees, 16-CV-6948 (JPO), 2017 WL 2881154, at *6 n.2 (S.D.N.Y. July 6, 2017) (unpublished).

[10] As noted above, Komac and Maycock contended that Local 114 no longer exists as an entity and that accordingly, the AFSCME-appointed administrators cannot request its client file or an accounting. The trial court did not decide the issue. Instead, referring to the AFSCME constitution, the court held that "even if Local 114 ceased to exist upon the certification of the Guild of Pacific Northwest Employees, it appears that AFSCME would nonetheless be entitled to Local 114's property and assets, which generally would include a client file." The respondents do not contest this ruling on appeal and thus the issue is not before us.

represents an organization acting through its "duly authorized constituents." RPC 1.13. Under the AFSCME constitution, which binds the affiliated local unions, the administrators are Local 114's "duly authorized constituents" because they have authority to "assume charge of the affairs and business" of the Local and "institute all necessary action to recover money or other property." See also Union De Empleados De Muelles De Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, 156 F. Supp. 3d 257, 261 (D.P.R. 2016), aff'd in part, appeal dismissed in part, 884 F.3d 48 (1st Cir. 2018) (holding that a lawsuit by the union could only be brought with the authorization of the union's trustee); Williams v. United Steel Workers of Am., AFL-CIO/CLC, 234 F. Supp. 2d 542, 547-48 (M.D.N.C. 2002), aff'd sub nom. Williams v. United Steelworkers of Am., AFL-CIO/CLC, 94 F. App'x 186 (4th Cir. 2004) ("[w]hen a local union is placed under administratorship, the International assumes control of the local union").

Therefore, the trial court erred by categorically denying AFSCME's claim to the Local 114 client file. But as with any former client, other obligations may supersede AFSCME's right.

3. Confidentiality Obligation to Joint Clients

Notwithstanding Local 114's right to receive its client file as a former client, we conclude that the law firms may have a superseding confidentiality obligation to Maycock, as well as to Komac and Local 1849 to the extent they are former clients of the law firms.

13

First, AFSCME is correct that RPC 1.7 does not control here and that the trial court erred by concluding it does. RPC 1.7 is titled "Conflict of Interest: Current Clients" and states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> . . .
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

Comment 4 to RPC 1.7 provides that if a non-waivable conflict arises after representation has started, the lawyer must withdraw from representation. Thus, the rule establishes that parties cannot waive the conflict arising from asserting adverse claims in the same litigation and that the remedy for such a conflict is withdrawal of representation. While AFSCME was adverse to Local 114, Maycock, and Komac in the federal lawsuit, the law firms never represented AFSCME. The conflict arose after termination of the attorney-client relationship, when AFSCME, the adverse party, took control of Local 114. Thus, RPC 1.7 does not apply and does not provide a remedy.

Nonetheless, there may still be a superseding confidentiality obligation. Under RPC 1.6(a), a "lawyer shall not reveal information relating to the

14

representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted" under certain listed conditions in RPC 1.6(b). " 'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." RPC 1.0A(e). RPC 1.6(a) applies to former clients as well as current clients. See In re Cross, 198 Wn.2d 806, 818, 500 P.3d 958 (2021) (attorney violated RPC 1.6(a) by disclosing information relating to the representation of a former client).

In this case, the only possible basis for superseding the law firms' confidentiality obligation to Maycock under RPC 1.6(a) would be Maycock's informed consent. This is because the disclosure could not be impliedly authorized to carry out the joint representation of Maycock and Local 114, given that the representation had already ended, and because the specific bases for disclosure under RPC 1.6(b) do not appear to be present.[11] Therefore, the law firms would have to obtain Maycock's informed consent before disclosing information related to his representation to Local 114. And indeed, the attorney fee agreement explicitly provided that "[y]ou confirm by your signatures below that you expressly consent to the communication to any of you, of information

---

[11] These bases include preventing death, bodily harm, the commission of a crime, and substantial injury to the property of another in relation to a crime; as well as the purposes of obtaining ethical advice, to establish claims on behalf of the lawyer, to comply with a court order, to detect conflict of interest, and in cases involving breaches of fiduciary responsibility. RPC 1.6(b).

received by Attorneys from any of you."[12] It noted that there were "various ways in which a future conflict of interest could arise," such as receiving conflicting instructions from each client, or if one client developed a defense which would adversely affect the interests of the other. Unsurprisingly, however, the agreement does not address the unusual situation here, wherein one of the parties adverse to the litigation subsequently took control of one of the clients. We conclude that there is insufficient information in the record to determine whether the law firms "communicated adequate information and explanation about the material risks" of Local 114's right to access the file even after being placed under the control of an AFSCME administrator.[13] RPC 1.0A(e). Therefore, on remand the trial court should determine whether Maycock's consent to share information with Local 114 was indeed "informed" in this case. See Kelley v. Tonda, 198 Wn. App. 303, 324, 393 P.3d 824 (2017) ("As this issue was not considered by the trial court, and the record on appeal is insufficient to reach a conclusion as a matter of law, it is a matter for the trial court to resolve on remand."). Moreover, if Komac and Local 1849 were also joint clients of the

[12] It is worth noting that the agreement in the record was only signed by Komac on behalf of Local 114, on the law firms' advisement that Maycock and Komac could "each sign separately." The agreement signed by Maycock does not appear in the record on appeal, casting additional doubt on Maycock's informed consent to the disclosure of the file, and the parties fail to address this omission.

[13] AFSCME contends that Maycock was aware that AFSCME could access the legal file because Maycock had access to the AFSCME constitution, which sets forth the provisions for administratorships. But the question is not whether Maycock knew an administratorship was possible, but whether he knew that in the event of an administratorship, AFSCME would be able to access the legal file from the litigation against it.

law firms, they too would have had to give informed consent to the disclosure of the client file. Accordingly, on remand the court should also address whether Komac and Local 1849 are former clients of the law firms and assess whether they gave informed consent if so.

4. Validity of the Administratorship

The respondents contended below that the administratorship was invalid and part of a series of retaliatory actions AFSCME took against them in response to the federal lawsuit. Members of Local 114 had appealed the legitimacy of the administratorship to the AFSCME Executive Council, but there was no decision in the appeal because the appealing members were no longer part of AFSCME. In its summary judgment ruling, the trial court assumed without deciding that the administratorship was valid, stating that it did not need to reach the issue "given the Court's decision"—that is, because it was denying access to the client file regardless, it did not matter whether the administratorship was valid.

Because we conclude that Local 114, as controlled by AFSCME, has at least some right to the client file, then the validity of the administratorship is no longer a moot point. The trial court may revisit this issue on remand because "the record on appeal is insufficient to reach a conclusion as a matter of law." Kelley, 198 Wn. App. at 324.

Accounting

The appellants say the trial court also erred by not ordering the law firms to provide an accounting, which Local 114 is entitled to as a matter of law. We agree.

17

RPC 1.15A(e) provides that a "lawyer must promptly provide a written accounting to a client or third person after distribution of property or upon request." Local 114 therefore has a right to an accounting.[14] However, as with the client file, the accounting may include "information relating to the representation" of the law firms' joint clients, who may not have given informed consent to that disclosure. The court should balance these rights on remand and redact the accounting if necessary.

We reverse and remand for the court to determine what, if any, superseding confidentiality obligations exist with respect to the information in the client file and accounting. The court shall then determine what must be redacted from the accounting and which documents must be redacted or removed from the client file before delivery to Local 114.

Smith, A.C.J.

WE CONCUR:

Brennan, J.                    Verellen, J.

---

[14] Counsel for Maycock and Komac contended that Kruse admitted he had already done his own accounting. But even if Kruse had accounted for where all of Local 114's money had gone, Local 114 was still entitled to the law firms' accounting, especially to ensure that its money had been properly spent.